## MOLLIE ROSENCRANTZ, PLAINTIFF IN ERROR,

*v.*

## TERRITORY OF WASHINGTON, DEFENDANT IN ERROR.

Married women residing with their husbands are competent grand jurors.

The Code of 1881, in prescribing the qualifications of grand jurors, had reference not only to the class of persons who, at the time of its enactment, possessed the qualifications prescribed, but also to all other persons who should afterwards become possessed of the qualifications.

Chapter 183 of the Code of 1881 removed the common law disabilities of a wife as a member of the family, and placed her in a position of equality with the husband.

Under this statute the husband and wife conjointly constitute the head of the family, and each, therefore, in contemplation of law, is a householder.

The constitution of a Grand Jury is not impaired by making married women members thereof.

Turner, Associate Justice, *dissenting,* holds that a married woman living with her husband is not the head of the family, and therefore not competent to serve on a Grand Jury; and, further, that had the Legislature of the Territory attempted to r. nder married women qualified jurors, it would have violated constitutional guarantees which secure juries, as known to the common law, composed exclusively of men.

ERROR, to Third Judicial District, holding terms at New Tacoma.

The plaintiff in error was indicted by the Grand Jury of the county of Pierce, at the May term of the District Court of the Third Judicial District of Washington Territory, holding terms at Tacoma, charged with the crime of keeping a house of ill-fame, resorted to for the purposes of prostitution.

It appeared that the following members of the Grand Jury that found and returned the indictment, Mrs. D. E. Lister, Mrs. F. Barlow, Mrs. Elizabeth Monroe, Mrs. E. J. Ross, and Mrs. Jernette Fuller, were, at the time of the summoning and impaneling of the Grand Jury, and at the time of the finding and returning of the indictment, each of them, married women, residing with their husbands, and maintained by them. And that. at all of said times, David Lister, one of the members of said Grand Jury, was the husband of the said Mrs. D. E. Lister, who was living with him as his wife, and being maintained by him as such; and that he was the head of his family, and the only householder therein.

The plaintiff in error moved to set that indictment aside, because the Grand Jury was not selected, drawn, summoned, or impaneled as prescribed by law. This motion was overruled, and the plaintiff in error duly excepted, and her exception was allowed.

A trial was then had, and the plaintiff in error was found guilty, and sentenced to pay a fine of $400 and the costs of the action.

*Struve, Haines & McMicken,* for Plaintiff in error.

No person shall he held to answer in any Court for any alleged crime or offense, unless upon an indictment of the Grand Jury. (Code of Washington, Sec. 764.)

By the term Grand Jury was meant, at the time of the enactment of this statute, a common law Grand Jury, which was a jury of men. (Bouvier's Law Dictionary, Title Jury; Blackstone's Commentaries, Cooley's, Vol. 2, *362; Thompson and Merriam on Juries, Secs. 463, 464.)

Under the statute in force at that time, only *qualified electors* and *householders* were competent to serve as members of a Grand Jury. (Code of Washington Territory, Sec. 2078.)

None but male citizens were then *qualified electors.* (Code of Washington Territory, Sec. 3050.)

The qualifications of Grand Jurors have not been changed since the enactment of that statute, unless it be by implication, in the act approved November 23, 1883, entitled "an Act to amend Section 3050, Chapter 238, of the Code of Washington," by which the word "male" is omitted from the section. (Laws of 1883, pp. 39, 40.)

The law does not favor the repeal of a statute by implication. (Sedgwick on the Construction of Statutory and Constitutional Law, pp. 105, 106, 98, and note a; *Bowen* v. *Lease*, 5 Hill N. Y. 225; *Rawson* v. *Rawson*, 52 Ill. 63; *Casey* v. *Harned*, 5 Clark, Iowa, 1; *The People ex rel. Freeman* v. *Barr*, 44 Ill. 198; *McCool* v. *Smith*, 1 Black. 459; Henderson's Tobacco, 11 Wallace, 652; Dwarris on Statutes, 674, *et seq.*)

The intention of the Legislature must govern in the construction of a statute. (Sedgwick on the Construction of Statutory and Constitutional Law, 194, *et seq.*, and cases cited).

In this case the manifest intention of the Legislature was to simply amend the election law so as to give to women the right of suffrage.

This is a statute in derogation of the common law, and must be construed strictly. (*Melody* v. *Reab*, 4 Mass. 471; *Gibson* v. *Jemy*, 15 Mass. 205; *Commonwealth* v. *Knapp*, 9 Pick., Mass. 496; *Wilbur* v. *Crane*, 13 Pick., Mass. 284; *Dwelley* v. *Dwelley*, 46 Me. 377; *Burnside* v. *Whitney*, 21 N. Y. 148; *Schuyler Co.* v. *Mercer Co.*, 9 Ill. 20; Easterly's Appeal, 54 Penn. 192.)

The construction involving the exercise of a doubtful power will not be readily adopted in the absence of direct words, when the words used admit of another construction free of all question in regard to the power. (Phill., N. C. L., 279.)

The Legislature, in making qualified electors eligible as grand jurors, referred to those persons who were, at the time of the adoption of the statute qualified, and did this, not because voters were supposed, from the mere fact of possessing the right of suffrage, better qualified as grand jurors, but used the expression only for more convenient reference, as meaning "American male citizens above the age of twenty-one years."

This meaning of the term "qualified electors" has never been enlarged by legislation.

Grand Jurors must be not only "qualified electors," but also "*householders.*" (Code of Washington, Sec. 2078.)

A householder is the "head of a family," or the master or person who has charge of or provides for it. (Code of Washington, Sec. 342; Abbott's Law Dictionary, Title Homestead; Winfield's Adjudged Words and Phrases, p. 302 and cases cited; Bouvier's Law Dictionary, Titles Householder, Household; Smythe on Homestead and Exemptions, Sec. 532; Thompson on Homestead and Exemptions, Sec. 65, and cases cited; · *Woodward* v. *Murray,* 18 Johnson, 400; *Griffin* v. *Sutherland,* 14 Barb. 456; *Bowne* v. *Witt,* 19 Wend., N. Y. 475.)

The construction of this term in statutes of exemption is adopted where it occurs in jury acts. (Thompson and Merriam on Juries, Sec. 174.)

By the common law, the husband and wife were regarded as one person, and the wife's legal existence and authority were in a certain degree lost or suspended. (2 Kent's Commentaries, 129; 3 Wait's Actions and Defenses, 635, and cases cited.)

The common law is the rule of decision in this Territory, so far as it is not repugnant to or inconsistent with the Constitution and Laws of the United States, and the Organic Act and Laws of the Territory. (Code of Wash., Sec. 1.)

The husband is the natural and legal head of the family. (Bishop on the Law of Married Women, Secs. 45, 46, 47, 48 and 49, and cases cited.)

The only changes that have been made regarding the rights of husband and wife, as compared with what they were at common law, are found in Chapter CLXXXIII of the Code, and this act by its title does not purport to affect anything but "the property rights of married persons," and can have reference to nothing else.

Section 2398, which provides that "all laws which impose civil disabilities upon a wife, which are not imposed or recognized as existing as to the husband, are hereby abolished," cannot be construed as embracing any wider range than the title of the chapter, that is, "Property Rights." Moreover, the liability to jury duty is not a *right*, but a *duty*. (Thompson and Merriam on Juries, Sec. 39; *Bragg* v. *The People,* 78 Ill. 330; *Friery* v. *The People,* 54 Barb. 319.)

The husband is the trustee of the community as regards all community property, and is recognized as the head of it. (Code of Wash., Secs. 2409, 2410.)

*C. M. Bradshaw,* Prosecuting Attorney.

The Legislature of Washington Territory has full power and competent authority to regulate the mode in which it will bring the offenders against its laws to trial; and it has, by laws well calculated to accomplish that purpose, made rules governing the Courts at every step in criminal proceedings.

Under the statute formerly in force, " only *qualified electors* and *householders* were competent to serve as members of a Grand Jury."

The qualifications of grand jurors have not been changed. " *Qualified electors* and *householders* " was and is the language used by the Legislature to define the qualifications of grand jurors.

It is true that the law does not *favor* repealing a statute by implication, but in certain classes of cases it *permits* it; and, if that question entered into this discussion, that would be enough to sustain our view in this case.

But the amendment to Section 3050 does not repeal or even amend Section 2078. The last named section describes certain classes of persons who are competent to act as grand jurors in this territory. But instead of describing such classes by name, as " men," " women," or " citizens," they are described as " qualified electors " and " householders."

Such was the Section 2078 before the amendment to Section 3050, and it is precisely the same now. It always was broad enough to take in whomsoever became a qualified elector. The young man under twenty-one years of age was not included in it, but that period passed, he was at once included in the class of electors who might become a juror, and if a householder, then a grand juror. The citizen of a foreign country was not competent as a grand juror, because he was not an elector. Upon the performance of certain conditions he became an elector, and as a consequence, competent as a juror.

The principle for which we are contending is laid down by the Supreme Court of Missouri, in *McKnight* v. *Crinnion,* 22 Miss. 559.

It is claimed that the grand jurors objected to were not *house-holders;* and therefore were not competent.

It seems to us that the plaintiff in error must be mistaken as to what a householder is.   He cites Sec. 342, but his statement of it is just the reverse of what we think was intended by the Legislature.   It does not say that " a householder *is* the head of a family," as stated by plaintiff, but simply, " there shall also be exempt from execution and attachment to every householder, being the head of a family," etc., clearly implying that there may be householders who are not, in the technical sense, heads of the family.   A person is a householder who may fairly and reasonably be said to be in the charge, and having devolved upon him or her the duty of caring for, maintaining, and supporting a family; as a general rule the husband, no doubt, is the householder; but too often these burdens and duties are cast upon the wife, and in such case she is the householder, and is entitled to whatever privileges belong to the " head of a house." Whatever may be thought of the above proposition as a rule of law, it is what the law ought to be.

The general tendency of legislation in this territory has been to abolish all distinction between the civil and property rights of men and women; and in those respects the whole system of the common law has been swept away, and in its stead a system of laws has been adopted which, although in some respects not perfect, is yet susceptible of being so construed and enforced as to secure to married women all that was clearly intended to be secured to them.

Opinion by HOYT, Associate Justice.

Plaintiff in error was indicted by a Grand Jury, composed in part of married women living with their husbands.   She took seasonable objection to said Grand Jury, on the ground that said women were not competent grand jurors, and her objection having been overruled, she has brought the case here, and assigns the overruling of her said objection as error.

The only important question raised by the record is the single one, as to whether or not, under the laws of this Territory, married women living with their husbands are competent grand jurors.

The Code of 1881 provides that all electors and householders shall be competent grand jurors, and it is claimed by plaintiff in error, that this must be held to apply to only such persons as were thus qualified at the time such provision was enacted, and not to such as should thereafter become endowed with such requisite qualifications; but to us it seems clear that the Legislature intended simply to prescribe what classes of persons in society, as it was then, or should be thereafter constituted, should be called upon to perform such jury duty, and that whenever a person by any change in his condition was brought within such requirements, he at once became liable to perform such duty, and that likewise where, by a change in the law, a class of persons was brought within such requirements, the members of such class at once became liable to society for all the obligations incident to the class of electors and householders of which they had thus become members.

Were such married women, then, electors and householders?

That they were electors, is fully conceded, leaving only the single question, as to their being householders, for consideration. We shall not be aided in this discussion by attempting to single out a definition of the word householder, as under the facts disclosed by this record the indictment herein must be sustained, if it is possible that a married woman living with her husband, as such, can be a householder within the meaning of such term, as used in our act as to grand jurors; and this must depend entirely upon the change wrought in family relation by chapter 183 of the Code of 1881; for of course it is conceded that under the common law, the relation of the wife to the husband was such, that while she was living with him she was not such a householder, as her identity was largely lost in that of her husband, and she had no right to be heard as to the disposition of the property or children that resulted from the marriage, so long as her husband survived.

This harsh rule of the common law has been, however, gradually changing, and from time to time various restrictions have been imposed upon the obsolete right of control of the husband; and the right of the wife to participate in such control came to be more and more recognized by the laws of nearly all of the States and Territories of this Union.

II. Wash.—18.

And the changes thus made in the law, though many of them were at the time considered radical, have so far as we are advised universally tended to the elevation of the marriage relation and of society, and have been fully sustained by the Courts. Our Legislature, imbued with this spirit of progress, enacted the law which now constitutes the chapter of the Code above referred to ; and that it intended radical legislation upon the subject is not only consonant with the spirit of the times, but is clearly shown in the title of the act, " An Act to define the Rights of Married Persons " ; not *certain* rights, but *the* rights ; and when such title is viewed in connection with the body of the act, it could probably with propriety read " all the rights."

At least, the title and the act are broad enough to show that it was the intention, by it, to abolish all the disabilities of the wife as a member of the family, which had been imposed upon her by the common law, and to provide instead of said common law rule, a new relation between husband and wife, as members of the family.

What was this new relation provided for in said chapter ?

To us it seems that the relation between husband and wife thereby established was (with certain exceptions therein stated) one of absolute equality before the law.

As it not only in express terms gives to her the same rights to hold property as her husband, but in section three of said act expressly abolishes all civil disabilities imposed on her by the marriage relation, which were not imposed or recognized as existing as to the husband ; and such positive and unequivocal language was used to make this section strong, and beyond question, that it was thought necessary to expressly provide that the right to vote or hold office should not thereby be conferred, lest the unrestricted language of said section should be so strong as to amend the election law by implication, and thereby enable women to vote, the single privilege or right which that Legislature was not ready to confer upon women, but which the subsequent one saw fit to freely and fully bestow.

Then, by section four of said act, she was given exactly the same measure of control over the children of the family as her husband, with the same right to any or all of their earnings, and the same voice in directing all things connected with the family government.

Before this act the father could control the children, irrespective of and even against the express wish and will of the mother, and could send them from or keep them at home at his own caprice.

Since its passage, by its express terms, all of this is changed ; and now the mother as fully controls the children as does the father; and it is clear that under said act it would take the agreeing wills of both father and mother before their children could be sent permanently away from home to attend school, or for any other purposes; and we think that likewise in all the affairs of the family (not excepted as above stated) what before could be done by the husband, even against the will of the wife, can now only be done by the consent of both.

At common law he had sole control, and was therefore properly treated and held as the head of the family ; by our statute the two together, and acting jointly, have like sole control, and are, therefore, jointly the head of the family.

But it is said that if they are thus equal, then neither of them is the head of the family, and therefore not the keeper of a house, as each is only a half of a housekeeper.

This, however, does not follow, as each of them has the absolute right to control the family and household in the absence of the other, and each has all the responsibilities and rights growing out of such control.

One person engaged in keeping a store is said to be a storekeeper, but we do not speak of one or two persons, who are keeping a store as equal partners, as a half of a storekeeper.

Neither do we think that one or two persons engaged upon equal terms in keeping a house, can be said to be or is only a half of a housekeeper.

Each acting for himself or herself, but in conjunction with his or her companion, is the keeper of the entire household.

The chapter in question has, then, so changed the common law that a wife living with her husband may be a householder, and hence qualified to serve as a grand juror.

But it is claimed that the said chapter is unconstitutional, if given this application to our jury system, on the ground that the jury guaranteed by the constitution is a jury of men ; but as this question was very slightly, if at all, argued in this case, we

shall content ourselves by saying that, as to this case, such posi-
tion is untenable, as the Legislature was at liberty to provide
for the trial of crime (not infamous) without presentment of a
Grand Jury at all, and *a fortiori* could provide for its present-
ment by other than common law Grand Jury. We find no er-
ror in the record, and the judgment and sentence must be af-
firmed, and it is so ordered.

I concur: S. C. WINGARD, Associate Justice.

Dissenting opinion by TURNER, Associate Justice.

I am compelled to dissent from the conclusion reached by a
majority of the Court in this case. I do not believe that fe-
males are competent under the law, as grand or petit jurors, nor
do I believe that females who are married and living with their
husbands are "householders," within the meaning of Section
2078 of the Code.

The question is not as to the meaning of the act of the Leg-
islature entitled "An Act to amend Section 3050, Chapter 238,
of the Code of Washington, approved November 23d, 1883.

That act does not purport to, and could not legally, do more
than its title expresses to be its purpose. The question is as to
the meaning of 2078 of the Code, which provides, "all qualified
electors shall be competent to serve as petit jurors, and all
qualified electors and householders shall be competent to serve
as grand jurors, etc."

Section 3050 being amended so as to make females "qualified
electors," it would seem that they are now embraced within the
provisions of Section 2078, and are therefore competent as ju-
rors, unless it is proper to construe Section 2078 to mean quali-
fied electors who were such at the time of the passage of the
law, or who might become such under then existing laws.

An argument in favor of this construction is found in the pro-
vision of the organic act which declares, "To avoid improper
influences which may result from intermixing in the same act
such things as have no proper relation to each other, every law
shall embrace but one object, and that shall be expressed in the
title.

Who shall be qualified electors, and what classes of citizens

shall be subject to jury duty, are entirely different questions, having no proper relation to each other. Therefore, to hold that the Legislature, in passing the law now incorporated in the Code as Section 2078, meant to establish a rule relating to jurors which might be materially altered and changed every time the Legislature enlarged or diminished the qualification of electors, is to suppose that *that* body contemplated and intended to provide for a course of conduct by its successors, opposed to the spirit if not the letter of the law under which it and they had and have their being. The organic act says, " Every law shall embrace but one object, and that shall be embraced in its title." Section 2078 says, " Laws relating to suffrage may embrace two objects, only one of which need be expressed in the title." Such is the effect of Section 2078, unless it be limited as I have suggested.

Another argument for that construction is found in the constitutional requirements concerning jury trials.

Section 2, Article 3, of the Constitution of the United States provides, " The trial of all causes, except in cases of impeachment, shall be by jury," etc. Article 5 of the amendment provides, " No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury," etc. Article 7 of the amendments provides, " In suits at common law, when the value in controversy shall exceed twelve dollars, the right of trial by jury shall be preserved," etc. The terms " Grand Jury " and " trial by jury " in these provisions have been held to secure to the citizens in the Courts of the United States and in the Courts of the Territories, such a Grand Jury and such a Petit Jury as was understood and secured by the common law of England. In construing such provisions, both in the Courts of the United States and in the Courts of the States having similar constitutional provisions, it has been held that the right to a jury trial, and the right to immunity from trial for crime, except on indictment by a Grand Jury, included all the incidents attaching to such proceedings. One of the incidents of a jury trial is, that the jury shall not be composed of less than twelve men. An incident of indictment by a Grand Jury is, that the Grand Jury shall not be composed of less than twelve men ; or in case that a

larger number comprise the body, that twelve must concur in finding the indictment, so that a man shall not be convicted of a crime except by the verdict of twenty-four of his neighbors. Another incident of trial by jury is, that the verdict shall be unanimous. Another incident is, that the jury must be selected from the great body of the citizens living in the vicinage; and where the number from whom juries may be selected has been unreasonably diminished by law, the law has been held unconstitutional, as impairing the right of trial by jury.

The application of all this to Section 2078 of the Code is, *that it cannot* be supposed that the Legislature, in framing *that* provision, meant to leave the important subject of jurors, and the incidents attaching to jury trials, to be effected by legislation upon an entirely different subject matter.

It might well be that at some future time the Legislature would wish to restrict the elective franchise. A provision limiting the right to vote to citizens of the age of fifty years, would be lawful as concerns the rights of electors, but it would be unlawful and unconstitutional as a limitation on the right of trial by jury.

Another incident of trial by jury at common law, in my judgment, was that the jury should be composed of men. The language of the *venire facias* was, that the sheriff cause to come on such a day " twelve free and lawful men." Blackstone gives as one of the causes of challenge to the poll, " *Propter defectum* "; as if a juror be alien born, this is defect of birth; if he be a slave or bondman, this is defect of liberty, and he cannot be *liber et legalis homo*. Under the word *homo*, also, though a name common to both sexes, the female, however, is excluded, *propter defectum sexus*. It cannot be doubted that at common law one of the incidents of a jury trial, with one exception, and that founded on regard for the delicacy of the sex, was, that the jury should be composed of men. Blackstone classes that qualification with those of citizenship and liberty. It is said that the rights of the weaker sex, if I may now call them so, are more regarded than in the days of Blackstone; and that the theory of that day, that women were unfitted by physical constitution and mental characteristics to assume and perform the civil and political duties and obligations of citizenship, has been

exploded by the advanced ideas of the nineteenth century. This may be true. No man honors the sex more than I. None has witnessed more cheerfully the improvement in the laws of the States, and particularly in the laws of this Territory, whereby many of the disabilities of that day are removed from them, and their just personal and property rights put upon an equal footing with those of men. I cannot say, however, that I wish to see them perform the duties of jurors. The liability to perform jury duty is an obligation, not a right. In the case of woman, it is not necessary that she should accept the obligation to secure or maintain her rights. If it were, I should stifle all expression of the repugnance that I feel at seeing her introduced into associations and exposed to influences which, however others regard it, must, in my opinion, shock and blunt those fine sensibilities, the possession of which is her chiefest charm, and the protection of which, under the religion and laws of all countries, civilized or semi-civilized, is her most sacred right.

If one woman is competent as a juror, all women having the same qualifications are competent. If women may try one case, they may try all cases. It is unnecessary to say more, to suggest the shocking possibilities to which our wives, mothers, sisters, and daughters may be exposed, unless the Legislature should hereafter relieve us from what I believe to be a mistaken construction of the law. These observations, however, are not pertinent here. The question is, What is the law?

I say, that the laws now concerning the important incidents of a jury trial are, by express constitutional provision, what they were at the common law, and that under that law a jury was no jury unless it was composed of men. The jury spoken of by the Constitution is the common law jury, and consists of twelve men. (Note to Sedgwick on the Construction of Stat. and Const. Law, 493.)

It is true that the constitutional guarantee of indictment before trial is extended by the Constitution to the trial of offenses only that are infamous; and that the offense above not beng infamous, it is competent for the Legislature to have the indictment found by such a Grand Jury as it pleases, or to prosecute without indictment of a Grand Jury if it pleases.

The qualification of grand and petit jurors being fixed by

the same section and in the same sentence of the law, however, it is certainly a good argument against a construction of that law, that would make women grand jurors in case of misdemeanor, to show that in no case, even by express enactment, could the Legislature make women petit jurors or grand jurors, to investigate capital or other infamous crimes.

It has been said that it is a safe and wholesome rule to adopt the restricted construction of a statute, when a more liberal one will bring us in conflict with the fundamental law. It would appear to be the same, where such a construction *may* bring us in conflict with the fundamental law.

In the construction of the statute under consideration, however, it is not necessary to resort to the principle of strict construction. Its letter and spirit comport as well with the view I have taken of its meaning, as with that adopted by a majority of the Court.

Next, as to the meaning of the word " householder," in the statute. Householder means, according to all the definitions, " the head of a family." I think that in all cases where there is a husband living with his family, that he is in contemplation of law the head, and the only head, of the family. It has been said, " the term householder has no reference to a holding of property. It is understood to mean the head, master, or person who has the charge of, and provides for a family," etc.

It is claimed that in this Territory the laws have placed the civil and property rights of husband and wife on an equal footing ; that they are equal as to rights and obligations in the household, and therefore that both of them are heads of the family, and both of them householders. If it be true that the laws of the Territory have had the effect stated, the logical deduction would seem to be, not that the law had created two heads of the family, but that it has deposed from the position of superiority what was formerly the one head, and that now there is no head, as understood by the common law term. The idea of a double head in nature or in government is that of a monstrosity.

But there is something even above the provisions of statutory law, in the conception embraced in the term the " head of a family." It embraces the idea of legal supremacy, perhaps, but is not confined to that.

The husband was not only the head of the family at common law, because under that law he had the right to be obeyed by all the family, including the wife, but because of inherent and acquired differences between himself and wife, in mental and physical constitution. He was better fitted to wage the war for present subsistence, and to accumulate the competence that was to make provision against want in the future.

The experience gained by him in prosecuting this branch of the partnership matured his judgment, strengthened his will, and made him confident and self-reliant. I believe that the facts I have mentioned obtain to this day, and that they operate and will continue to operate, to give the husband paramount authority in the household, as that term is understood at common law, until an upheaval of nature has reversed the position of man and woman in the world. Legislative enactment would not make white black, nor can it provide the female form with bone and sinew equal in strength to that with which nature has provided man. No more can it reverse the law of cause and effect, and clothe a timid, shrinking woman, whose life theater is, and will continue to be, and ought to continue to be, primarily the home circle, with the masculine will and self-reliant judgment of a man.

The law has not attempted to do any such thing. It can only be effected, if effected at all, by countless ages of a civilization in which the scope of usefulness of women in the world and in society is changed and reversed. It cannot be truthfully said that changes in the property or civil rights of women in this Territory, such as are found in the statutes, has had or has begun to have such an effect.

But it is not true that the laws of this Territory have wiped out in every respect the supremacy of the husband, and put the wife upon a plane with him in the matter of rights and obligations. Section 2399 does not in my opinion, as has been assumed, raise an issue to be adjudicated at law, when the husband and wife disagree as to the school the children should attend, the branches of learning they should be taught, or the profession or avocation in life they should be trained to follow.

This would be a more intolerable evil than the unrestrained control of such matters by the one or the other. Section 2399

relates to the custody of the children, and the right to receive their earnings in cases of separation.

The use of the term " misconduct " shows that, moreover, the earnings of the children being community property, the right of the husband to receive it and apply it, unless in case of separation, is undoubted.    (Section 2409.)

The control of the husband over community personal property, extending to the right to dispose of such property as he pleases, without accounting to the wife, is another particular in which the legal rights of the husband are superior to those of the wife.

The right of the husband over the wife is again recognized in the provision giving him the preference right to select the homestead for the family, from the community real property.

This right of a selection of the family homestead suggests another matter in which the right of the husband is paramount. His domicile is the domicile of the wife, and she may not abandon it for one year without giving him legal ground for the divorce.    The converse of the proposition is not true.    The wife cannot say to her husband, " You must live here, if you wish to live with me "; but the husband may so say to the wife, if he offers her a home suitable to her condition.

Another distinction in rights, which recognizes the paramount obligations of the husband, is in the matter of alimony in case of separation.    The law imposes upon the husband the obligation of supporting the wife, and the Courts will so decree ; but it would be a novel idea that the husband should assert such a claim against the wife.

There is an exception in the law in favor of the wife from responsibility for criminal acts done in the presence of her husband, which it is believed the statutes of this Territory have not wiped out.

How can the wife be considered an entirely free agent in matters of only civil concern, and of but little moment, when it is the policy of the law to consider that she is so much under the influence of the husband, that it will not hold her responsible for crimes committed in his presence ?

An ingenious mind, having the time to employ in the task, might multiply the illustrations indefinitely.

An argument to the effect that the law considers the wife a "householder" is attempted to be drawn from the relations to each other of Section 342 of the Code and Section 2415. The first section named gives the right to select a homestead, to every "householder being the head of a family." The latter section authorizes both the husband and wife to select homesteads from their separate property, and it is said that in this respect it is supplementary to Section 342, and has the effect to recognize the wife as a householder. It is answer to this to say, that Section 2415 is part of the chapter relating to the property and other rights of married women; and that having given her a separate property, it was thought proper to give her the same exemptions with respect to it, that other persons had. Section 342 gives the exemption only in favor of a homestead occupied as such. Section 2415 gives it without qualification. If Section 2415 were considered only as an extension to married women of the right received by Section 342, it was unnecessary, on the theory that married women are householders and heads of their families. Their right to the exemption would attach under Section 342, without further legislation.

My views, therefore, are that women cannot be jurors; and that they cannot be householders so long as they are married, and sharing the household of the husband.