[No. 35640. *En Banc.* May 11, 1961.]

RICHARD GOODE *et al., Appellants,* v. PAUL V. MARTINIS, *Respondent.**

*Douglas R. Hendel* and *John F. Kovarik,* for appellants.

*William F. Ingram* of *Bell, Ingram & Smith,* for respondent.

DONWORTH, J.—This is an action brought by Richard and Edna V. Goode, as husband and wife, against respondent, Paul V. Martinis, to recover twenty-five thousand dollars damages for an alleged assault and battery by Mr. Martinis upon Mrs. Goode (who will be referred to as though she were the sole appellant, since her husband is only a nominal party to this action). The case comes before us only on the complaint, as appellant's cause of action was dismissed prior to trial.

At the time of the alleged assault, January 9, 1958, appellant and respondent were husband and wife, although on November 14, 1957, appellant had commenced a divorce action against respondent which was then awaiting

*Reported in 361 P. (2d) 941.

trial. On December 18, 1957—some three weeks prior to the date of the alleged assault—the two parties entered into a comprehensive separation agreement settling their respective property rights as well as the questions of child custody and support.[1] On February 18, 1958, almost six weeks after the date of the alleged assault, the divorce action was tried and appellant was awarded a final decree of divorce from respondent on the grounds alleged in her original divorce complaint (cruelty and personal indignities).

Pertinent portions of appellant's amended complaint in the tort action now before us read as follows:

"IV. On or about the evening of January 9, 1958, eight weeks subsequent to the separation of the plaintiff Edna V. Goode and the defendant herein, and more than three weeks following the execution of the separation agreement referred to in Paragraph III hereof, the defendant entered the residence of the said plaintiff in Everett, Washington, and then and there did assault said plaintiff by forcibly having sexual intercourse with her against her will, without her consent, and over her repeated protests.

" . . .

"VI. The instances of cruelty and personal indignities alleged in said plaintiff's divorce complaint were held by the [divorce] court to be sufficient grounds for the granting of said decree of divorce and were not related to the assault

---

[1] This agreement commenced with the following recitals:

"WHEREAS, the parties hereto are husband and wife and have heretofore separated and ceased to live together, and

"WHEREAS, there is now pending between the parties a certain action in the Superior Court of the State of Washington for the County of Snohomish under Docket No. 63055 entitled 'Edna V. Martinis, Plaintiff, vs. Paul V. Martinis, Defendant'," and ended with paragraph 14, which provided:

"That neither party hereto shall be liable for any money for support, alimony or maintenance of the other party, but that the agreement herein set forth shall be in full discharge of all and any liability of any kind on the part of First Party, as husband, for the Second Party, as wife, or on the part of Second Party, as wife, toward First Party, as husband, and neither of said parties shall have the right to pledge the credit of the other for anything whatever. It is understood that this is a complete and final settlement of the rights of the parties hereto."

It was also provided that appellant had the right to occupy the family home rent free until July 1, 1958.

herein alleged. The evidence adduced at the trial of said divorce action was limited to the issues raised by the pleadings. The trial court was not aware of the assault herein alleged and the issues raised herein were in no way litigated in said divorce action. The provisions of said divorce decree relating to property division and child custody and support were identical to the provisions of the 'Property Settlement and Custody Agreement' made by the parties prior to the assault herein alleged.

"VII. The plaintiff, Edna V. Goode, could not, in the exercise of reasonable diligence, have presented the issues of the assault herein alleged at the time of the trial of the divorce action because said plaintiff's physical condition was not then fixed, medical care and treatment was still then required and was being *affected*, and her damages were not, at that time, ascertainable. Further, said plaintiff did not have adequate time between said assault and the trial of the divorce action to adequately prepare and present these issues to the trial court.

"VIII. Several years prior to the occurrence of the assault herein alleged, the plaintiff Edna V. Goode had undergone surgery resulting in the removal of both her Fallopian tubes and one ovary; the aforementioned assault by the defendant directly and proximately caused the traumatic rupture of a corpus luteal cyst at said plaintiff's remaining ovary, resulting in profuse internal hemorrhage, and requiring emergency surgery for the removal of her remaining ovary and her uterus, and further corrective measures."

Respondent moved, under Rule of Pleading, Practice and Procedure 12(b)(6), RCW Vol. 0, to dismiss appellant's complaint for failure to state a claim upon which relief can be granted. The trial court granted respondent's motion, dismissing the amended complaint with prejudice.

The sole question, therefore, for our determination is whether or not a divorced wife can maintain an action against her former husband based on a personal tort committed while the parties were legally separated but before the decree of divorce was finalized.

It is generally agreed that, at common law, the fictional concept of unity of persons meant that tort actions, as well as all other types of civil actions, could not be maintained by one spouse against the other. As stated by one authority, "as to her personal and property rights the very legal ex-

istence of the wife was regarded as suspended for the duration of the marriage." See Prosser on Torts (2d ed.) 670, § 101. At common law, a wife possessed no capacity to contract, to sue, or to be sued without the joinder of her husband. But by legislation in this state, as in many other American jurisdictions, these vestiges of a feudal society have been largely eliminated.

The following Washington statutes make reference to the right of spouses to maintain actions in their individual capacity:

RCW 26.16.130 provides, in part, that a wife

". . . may prosecute and defend all actions at law for the preservation and protection of her rights and property as if unmarried."

RCW 26.16.150 provides that:

"Every married person shall hereafter have the same right and liberty to acquire, hold, enjoy and dispose of every species of property, and to sue and be sued, as if he or she were unmarried."

RCW 26.16.160 provides that:

"All laws which impose or recognize civil disabilities upon a wife, which are not imposed or recognized as existing as to the husband, are hereby abolished, and for any unjust usurpation of her natural or property rights, she shall have the same right to appeal in her own individual name, to the courts of law or equity for redress and protection that the husband has: *Provided, always*, That nothing in this chapter shall be construed to confer upon the wife any right to vote or hold office, except as otherwise provided by law."

The leading Washington case on the question of personal tort actions by spouses *inter se* is that of *Schultz v. Christopher*, 65 Wash. 496, 118 Pac. 629 (1911). The case concerned a suit by a divorced woman against her former husband based on what the court characterized as an intentional tort (communicating a venereal disease) *committed while the parties were still married and living together*. The sole statute relied upon by the plaintiff-wife was that which is now codified as RCW 26.16.160, set forth

*supra,* dealing generally with the abrogation of the common-law disabilities of married women. The court in the *Schultz* case held that nothing contained in RCW 26.16.160 conferred the right upon one spouse to sue the other for the commission of a personal tort. We quite agree. However, in view of the very unusual factual pattern of the *Schultz* case, as well as the narrow purpose of the one statute upon which the holding was based, we are inclined to think that the *Schultz* case is neither controlling nor dispositive of the issue now before us.

 Assuming for purposes of argument that RCW 26-.16.150, providing that a married person shall have the same right "to sue and be sued, as if he or she were unmarried," does not abrogate the common-law rule of spousal disability *inter se,* we feel that, in light of the facts of this case, as alleged in appellant's complaint, she should be afforded her day in court.

There have been a number of reasons advanced over the years in support of the common-law rule. But each of these reasons is largely inapplicable to the factual pattern now before us. The chief reason relied upon by the courts in jurisdictions which refuse to permit the maintenance of personal tort actions between spouses is that such actions would disrupt and tend to destroy the peace and harmony of the home.[2] Whether, in general, there is any merit to this position (in view of the fact, for instance, that by swearing out a criminal complaint for assault and battery a wife can rather effectively disrupt the tranquility of the home by means of another legal avenue), is not really germane to the determination of the cause in question. Here, divorce proceedings had already been instituted and the parties, by written agreement, were living apart. It is obvious that there was no domestic harmony left to be disrupted or destroyed. The assault itself, also, rather glaringly points up the fact that whatever chance the parties

---

[2]See 43 A. L. R. (2d) 632 for a comprehensive summary of the law relating to this subject, indicating that about two thirds of the American jurisdictions still adhere to the common-law rule.

may have had to reconcile their differences was irrevocably extinguished.

Along the same line, it has been suggested that the criminal law affords an injured spouse his or her adequate remedy, at least in the case of an intentional tort. See *Peters v. Peters*, 156 Cal. 32, 103 Pac. 219 (1909), and *Austin v. Austin*, 136 Miss. 61, 100 So. 591 (1924). As stated in *Courtney v. Courtney*, 184 Okla. 395, 87 P. (2d) 660 (1938), a criminal action may be adequate to prevent future wrongs, but it certainly affords no compensation for past injuries. Also, see *Johnson v. Johnson*, 201 Ala. 41, 77 So. 335, 6 A. L. R. 1031 (1917), and *Crowell v. Crowell*, 180 N. C. 516, 105 S. E. 206 (1920).

A third reason often advanced in favor of the common-law rule of spousal disability is that to permit such litigation would inflict upon the courts a burdensome amount of relatively trivial lawsuits, often involving little more than family squabbles. See *Thompson v. Thompson*, 218 U. S. 611, 54 L. Ed. 1180, 31 S. Ct. 111 (1910).

There is nothing in the experience of the dozen or more jurisdictions in this country which do permit spouses to sue one another for personal torts which would indicate that court calendars have become cluttered with trivial matrimonial disputes. We think it is fair to assume that few litigants would consider it worth-while to initiate such actions. Furthermore, under the facts alleged in appellant's complaint, we can hardly classify *this* cause of action as an insignificant marital squabble.

Much in the same vein, it has been suggested that where one or both of the spouses carry liability insurance, to permit suits between them would encourage collusion and fraud—the theory being that in such a proceeding the only real adversary might be the insurance company. As pointed out in the case of *Brown v. Gosser* (Ky.), 262 S. W. (2d) 480 (1953), this line of argument presupposes that courts are so ineffectual and the jury system is so imperfect that fraudulant claims cannot be distinguished from the legitimate. We follow the Kentucky court in refusing to subscribe to this pessimistic premise. But, in any event, the

premise has no relevance to the case before us due to the fact that an intentional tort is involved and, as far as we are aware, torts of this nature are not covered by liability insurance policies.

Where at the time of the tort the marital relationship of the parties has completely lost its original character and the parties have taken concrete legal steps to dissolve the marital relationship altogether, we can perceive of no convincing reason for depriving an injured spouse of his or her cause of action.

The recent case of *MacKenzie v. Sellner, ante* p. 101, 361 P. (2d) 165 (1961), concerned an action by a plaintiff who sustained injuries in an auto accident. The defendant driver was a woman who was legally separated from her husband at the time of the mishap. The plaintiff joined the husband in the action as a codefendant and sought to hold the defendants' marital community liable for the judgment. In exonerating the marital community from liability, the court stated that:

". . . a divorce action had been commenced, the parties were living separate and apart, and a property settlement agreement had been executed and subsequently approved by the court, which determined the status and character of Mr. and Mrs. Sellner's present and future property from the date of the property settlement agreement, as well as determining the status and character of their present and future obligations. Nothing but the shell of the marriage contract remained at the time the tort occurred."

The marital status of the defendants in the *MacKenzie* case was virtually identical to that of the parties in the case at bar at the time of the alleged assault. Where only "the shell of the marriage contract" remains, we find no justification, at least in the present context, for determining the legal rights of the parties as if nothing had ever happened to interrupt their marital relations. To do otherwise is to ignore the realities of the situation and indulge in a fanciful assumption, which is contrary to the facts alleged in the amended complaint.

While we realize that many of the points we have discussed in the body of this opinion relate equally to the general question of suits between spouses,[3] we limit our holding to the particular facts of this case—an alleged intentional tort committed by one spouse against the other during the pendency of previously initiated divorce proceedings when the parties are legally separated. In reaching the result which we do in this case, we are in accord with the following cases: *Steele v. Steele*, 65 F. Supp. 329 (1946); *Taylor v. Patten*, 2 Utah (2d) 404, 275 P. (2d) 696 (1954); and *Apitz v. Dames*, 205 Ore. 242, 287 P. (2d) 585 (1955).

For the reasons stated above, the judgment of the trial court dismissing appellant's amended complaint is reversed and the cause remanded for a trial on the merits.

FINLEY, C. J., HILL, WEAVER, ROSELLINI, OTT, FOSTER, and HUNTER, JJ., concur.

MALLERY, J., did not participate.

---

[3]For discussions of the entire question of personal tort actions between spouses, see Sanford, Personal Torts Within the Family, 9 Vand. L. Rev. 823 (1956); McCurdy, Personal Injury Torts Between Spouses, 4 Vill. L. Rev. (1959); Hagland, Tort Actions Between Husband and Wife, 27 Geo. L. Jour. 697 (1939); and Hotes, Tort Actions Between Husband and Wife, 9 Clev.-Mar. L. Rev. 265 (1960).