[No. 42187. En Banc. August 31, 1972.]

CLIFFORD FREEHE, *Appellant,* v. HAZEL KNOBLAUCH
FREEHE, *Respondent.*

*Hammermaster & Robbins,* by *Charles E. Robbins,* for
appellant.

*Merrick, Hofstedt, Schumm & Lindsey,* by *Thomas J.
Collins,* for respondent.

NEILL, J.—Plaintiff, Clifford Freehe, seeks compensation
for personal injuries allegedly sustained due to defendant's
negligent maintenance of a tractor and failure to warn

plaintiff of the tractor's unsafe condition. The claim for relief would be just the normal action in tort for personal injury but for the fact that the defendant is the wife of the plaintiff, thus bringing into issue the doctrine of interspousal tort immunity.

The farm on which the accident took place is the separate property of defendant, doing business under the name of Hazel Knoblauch. The tractor involved in this accident, together with all other assets and income of the farm, were and remain the separate property of defendant. The business of the farm is carried on separately from any community business of the parties. Plaintiff has no interest in the farming operation. Neither was he employed by defendant.

The trial court granted defendant's motion for summary judgment solely on the basis of interspousal tort immunity. Plaintiff appeals.

Because the common-law doctrine of immunity is based upon the law's policy toward the personal relationship of the parties, and because the business liability of a sole proprietor is coextensive with and indistinguishable from the proprietor's "personal" liability, we will resist the temptation to treat this case as somehow involving an issue that is distinct from the general question of whether the rule of interspousal immunity should be retained. In *Manion v. Pardee*, 79 Wn.2d 1, 3, 482 P.2d 767 (1971), we said that "Comment or any possible reexamination of this doctrine by the court must await a proper factual setting." The case at bench presents that setting.

The case which apparently established the doctrine of interspousal tort immunity in Washington is *Schultz v. Christopher*, 65 Wash. 496, 118 P. 629 (1911). In that case the court referred to the common-law notion of "unity" of husband and wife, a notion which had been first adverted to (disapprovingly) in the case of *Rosencrantz v. Territory of Wash.*, 2 Wash. Terr. 267, 5 P. 305 (1884). In *Schultz*, the court emphasized that plaintiff had *conceded* her disability to sue in the absence of legislation. She relied solely upon a statute presently codified as RCW 26.16.160. On that basis,

this court held that the statute merely placed a husband and wife on an equal footing and that the conceded disability was equally applicable to both spouses.

On three subsequent occasions parties before this court have claimed the defense of this immunity and in each instance we have rejected the defense on varying grounds. In *Johnson v. Ottomeier*, 45 Wn.2d 419, 275 P.2d 723 (1954), we held the common-law disability rule inapplicable against the personal representative of a deceased spouse, noting at page 424 that "the reason for the immunity no longer exists when one spouse is dead." In *Goode v. Martinis*, 58 Wn.2d 229, 361 P.2d 941 (1961), we held the disability inapplicable in an action for an intentional tort committed while the parties were legally separated but before their divorce was final, concluding that only a "shell of the marriage" existed under the facts. Then in *Manion v. Pardee, supra,* we held the disability rule inapplicable to an action for a tort committed before marriage, where the parties had become divorced during pendency of that appeal.

Throughout these cases, this court has dealt with matters of statutory construction. We shall treat this aspect of the issue in later pages. At this point, we observe as a threshold matter that no statute in this state establishes or affirms a rule precluding one spouse from suing the other for a tort committed during coverture. The rule of interspousal immunity or disability is of common-law origin, court made and court preserved. Our survey of the Washington cases shows that the reception and application of the rule has been less than enthusiastic. A rule so diligently avoided invites our critical reexamination.

Our cases have referred to the historical arguments supporting the common-law disability. One is the "supposed unity of husband and wife." *Johnson v. Ottomeier, supra; Schultz v. Christopher, supra.* A second is a public policy of preserving peace and tranquility in the home. *See Goode v. Martinis, supra; Johnson v. Ottomeier, supra.* We deal first with these two reasons.

The "supposed unity" of husband and wife, which serves as the traditional basis of interspousal disability, is not a reference to the common nature or loving oneness achieved in a marriage of two free individuals. Rather, this traditional premise had reference to a situation, coming on from antiquity, in which a woman's marriage for most purposes rendered her a chattel of her husband.

It has been said, whether humorously or not, that at common law husband and wife were one person, and that person was the husband . . . [A]s to her personal and property rights, the very legal existence of the wife was regarded as suspended for the duration of the marriage, and merged into that of the husband, so that she lost the capacity to contract for herself, or to sue or be sued without joining the husband as a plaintiff or defendant. The husband acquired the right to possession and use of his wife's real and personal property, and he was entitled to all of her choses in action, provided that he "reduced them to possession" during marriage by some act by which he appropriated them to himself, such as collecting the money or obtaining judgment in a suit in his own name. In turn he became liable for the torts of his wife, committed either before or during the marriage.

(Footnotes omitted.) W. L. Prosser, *Torts* § 122, 859-60 (4th ed. 1971). At old common law, with the husband entitled to the chose in action for his own torts and liable to himself for his wife's torts against him, the rule of interspousal disability made sense.

Things have changed. They had changed 88 years ago when the *Rosencrantz* court, noting the improved legal status of married women, held them as eligible as their husbands to serve on juries. Neither spouse is liable for the separate debts of the other. RCW 26.16.200. And either spouse may sue the other for invasion of separate property rights. RCW 26.16.180; *Mattinson v. Mattinson*, 128 Wash. 328, 222 P. 620 (1924). Recent legislation (Laws of 1972, 2d Ex. Sess., ch. 108) radically alters the relative right of the wife to manage and represent community property, rights and interests. Spouses are no longer individually liable for

each other's torts unless they would be jointly liable if unmarried.

Modern realities do not comport with the traditional "supposed unity" of husband and wife. In our view, this concept of legal identity is no longer a valid premise for a rule of this interspousal disability.

A second major reason given for the disability is the notion that to allow a married person to sue his or her spouse for tort damages would be to destroy the peace and tranquility of the home. On reflection, we are convinced that this is a conclusion without basis. If a state of peace and tranquility exists between the spouses, then the situation is such that either no action will be commenced or that the spouses—who are, after all, the best guardians of their own peace and tranquility—will allow the action to continue only so long as their personal harmony is not jeopardized. If peace and tranquility are nonexistent or tenuous to begin with, then the law's imposition of a technical disability seems more likely to be a bone of contention than a harmonizing factor.

We have previously discussed the family tranquility argument in an analogous context (parent-child disability: *Borst v. Borst*, 41 Wn.2d 642, 251 P.2d 149 (1952)) and in dicta in an interspousal disability case (*Goode v. Martinis, supra*). On both occasions, the argument has been rejected. For the reasons stated here and in those cases, we now expressly reject the notion that the desirability of family peace and tranquility is a valid reason for precluding a cause of action in tort against the tort-feasor spouse. *See also* Notes, 37 Wash. L. Rev. 233 (1962), and 38 Wash. L. Rev. 371 (1963).

A third reason advanced in support of maintaining the common-law rule of disability is the suggestion that the injured spouse has an adequate remedy through the criminal and divorce laws. It has been observed that neither of these alternatives actually compensates for the damage done, or provides any remedy for nonintentional (negligent) torts. Prosser, *supra* at 862-63. We have previously

observed that while "a criminal action may be adequate to prevent future wrongs . . . it certainly affords no compensation for past injuries." *Goode v. Martinis, supra* at 234. To these reflections we add the observation that limiting the injured party to a divorce or criminal action against his or her tort-feasor spouse is quite inconsistent with any policy of preserving domestic tranquility. Thus, the argument based on suggested legal alternatives simply does not withstand analysis.

It has also been argued that to permit litigation between spouses over personal torts would flood the courts with a burdensome amount of trivial matrimonial disputes. As a matter of theory, this argument could be interposed against virtually all personal injury claims. Any validity to the argument would depend whether such a "flood" materializes in practice. In *Goode v. Martinis,* 58 Wn.2d 229, 361 P.2d 941 (1961) at 234, we observed:

> There is nothing in the experience of the dozen or more jurisdictions in this country which do permit spouses to sue one another for personal torts which would indicate that court calendars have become cluttered with trivial matrimonial disputes. We think it is fair to assume that few litigants would consider it worth-while to initiate such actions.

More recently, it has been noted that the number of jurisdictions permitting such suits has expanded, without apparent congestion. Prosser, *supra,* note 61, at 864. Thus, this theoretical problem has not materialized elsewhere. Furthermore, should the courts find this possibility to be materializing, there is nothing to prevent application of established notions of "consent" or "assumption of risk" to minor annoyances associated with the ordinary frictions of wedlock. *See* Prosser, *supra* at 863.

Respondent also suggests that another argument in favor of the disability rule is that to permit suits between spouses would encourage collusion and fraud where one or both of the spouses carries liability insurance. In *Goode v. Martinis, supra* at 234, we rejected this "pessimistic premise,"

noting that "this line of argument presupposes that courts are so ineffectual and the jury system is so imperfect that fraudulent claims cannot be distinguished from the legitimate." In the analogous case of *Borst v. Borst, supra* at 653, we stated:

> The courts may and should take cognizance of fraud and collusion when found to exist in a particular case. However, the fact that there may be greater opportunity for fraud or collusion in one class of cases than another does not warrant courts of law in closing the door to all cases of that class. Courts must depend upon the efficacy of the judicial processes to ferret out the meritorious from the fraudulent in particular cases. [Citation omitted.] If those processes prove inadequate, the problem becomes one for the legislature. [Citation omitted.] Courts will not immunize tort feasors from liability in a whole class of cases because of the possibility of fraud, but will depend upon the legislature to deal with the problem as a question of public policy.

We there cited, as an example of the ability of the legislature to cope with such a problem should it arise, the enactment of host-guest statutes (RCW 46.08.080, .085, .086) in automobile personal injury cases. We conclude that this possibility is not a valid premise for the common-law disability rule.

■ Respondent also suggests that any change in the marital disability rule is a matter for the legislature, citing *Schultz v. Christopher, supra.* This argument ignores the fact that the rule is not one made or sanctioned by the legislature, but rather is one that depends for its origins and continued viability upon the common law. In these circumstances, it is proper to echo the words quoted in *Borst v. Borst, supra* at 657:

> "Legislative action there could, of course, be, but we abdicate our own function, in a field peculiarly nonstatutory, when we refuse to reconsider an old and unsatisfactory court-made rule." [*Woods v. Lancet,* 303 N.Y. 349, 102 N.E.2d 691.]

■ Furthermore, we now observe that our prior cases which are cited as recognizing the common-law rule, have

contained statutory analysis focusing on the provisions of RCW 26.16.160 (equality). Another important statutory section is RCW 26.16.150. In *Goode v. Martinis, supra,* we assumed, for purposes of argument, that section .150 is not a legislative abrogation of the doctrine of interspousal immunity. Section .150 expressly states that "Every married person shall hereafter have the same right and liberty . . . to sue and be sued, as if he or she were unmarried." Whatever may have been the view of this court as to the impact of RCW 26.16.150 on the common-law doctrine here at issue, and it appears that we have not heretofore actually examined into the question, this court has never interpreted section .150. We are now of the view that the statute means what it says and that, to the extent that a spouse has an individual interest in compensation for personal injuries, the statute allows him or her to bring suit against the tort-feasor spouse.

This brings us to consideration of respondent's argument that courts of this state are compelled to maintain the common-law disability rule due to the fact that we are a community property jurisdiction. In companion cases the Supreme Court of California, a community property state, convincingly refuted the reasons for the common-law rule. *Self v. Self,* 58 Cal. 2d 683, 376 P.2d 65, 26 Cal. Rptr. 97 (1962); *Klein v. Klein,* 58 Cal. 2d 692, 376 P.2d 70, 26 Cal. Rptr. 102 (1962). *See also* Prosser, *supra,* note 61, at 864. In a later case on a related matter, Chief Justice Traynor of that court observed:

> The fictional unity of husband and wife has been substantially vitiated by the overwhelming evidence that one plus one adds up to two, even in twogetherness. Thus, one spouse may recover against another in tort. [Citations.] The reasoning is that if he tortiously injures her, or vice versa, he or she does so independently of her or him. The tortfeasor, though perhaps not quite himself or herself at the time of the tort, is clearly not one with the injured spouse. Indeed, the latter emerges more separate than ever, now that injury has been added to the usual marks of identity.

*People v. Pierce*, 61 Cal. 2d 879, 880, 395 P.2d 893, 40 Cal. Rptr. 845 (1964).

The gist of respondent's argument on this point is that, under community property principles, the tort-feasor spouse would obtain half the recovery and, to that extent, benefit by his or her own wrong. Respondent suggests that the *Self* and *Klein* cases are distinguishable because of a California statute declaring that recoveries for personal injuries are the separate property of the injured spouse. We note that the California court did not rely solely upon that statute; rather, the statute was cited as an alternative ground, it first being concluded that the common-law disability ought to be abandoned as a judicial matter. *Self v. Self, supra.*

■ In more direct response, this argument mistakenly assumes that courts are incapable of fashioning a remedy appropriate to a newly recognized enforceable claim for relief. For the simple reason that no enforceable claim has heretofore been recognized in this area, none of our prior cases allocating personal injury recoveries can be said to be on point. That is, we are not here concerned with the established rule that recovery for injuries to a married person by a third-party tort-feasor is community property. Nor does any statute expressly deal with the allocation of damages as between the spouses in such an action.[1] In these circumstances, it is for the court to fashion an appropriate remedy. We think that justice would best be served in these cases by a rule that compensates the injured spouse

---

[1] In this connection, we note that subsequent to the abolition of the disability by the California court in *Self v. Self*, 58 Cal. 2d 683, 376 P.2d 65, 26 Cal. Rptr. 97 (1962) and *Klein v. Klein*, 58 Cal. 2d 692, 376 P.2d 70, 26 Cal. Rptr. 102 (1962), the California legislature adopted the rationale of these cases by enacting a statute (Cal. Civ. Code § 163.5 (West Supp. 1968)), stating:

> All money or other property paid by or on behalf of a married person to his spouse in satisfaction of a judgment for damages for personal injuries to the spouse or pursuant to an agreement for the settlement or compromise of a claim for such damages is the separate property of the injured spouse.

(Footnote omitted.) 57 Calif. L. Rev. 592 (1969).

without unduly benefitting the tort-feasor spouse. See discussion 38 Wash. L. Rev. 374-79 (1963). We think that these dual considerations are best served by the following formula: (1) Special damages, including established future specials, are recoverable by the community. These are actual, out-of-pocket expenses which are a community liability. The fact that the tort-feasor spouse is thereby spared his or her community share of these expenses is, we think, outweighed by the facts that these damages are strictly compensatory in nature, inuring directly to the benefit of the injured spouse, and that any reduction in the damages recoverable would most directly and harmfully affect the injured spouse. (2) General damages for loss of future earnings which would have constituted community property are recoverable in the fraction of one-half, by the injured spouse, as his or her separate property. (3) General damages compensating for pain and suffering, emotional distress, etc., are fully recoverable and are the separate property of the injured spouse.

We are cognizant of the long-standing nature of the common-law rule of interspousal tort immunity. But we find more impelling the fundamental precept that, absent express statutory provision, or compelling public policy, the law should not immunize tort-feasors or deny remedy to their victims. With this in mind, we have reviewed the stated reasons for the common-law rule, and have found all of them to be insufficient. Therefore, the rule of interspousal disability in personal injury cases is hereby abandoned. To the extent that *Schultz v. Christopher*, 65 Wash. 496, 118 P. 629 (1911), can be read as inconsistent herewith, it is overruled.

Reversed and remanded.

HAMILTON, C.J., FINLEY, ROSELLINI, HALE, HUNTER, STAFFORD, WRIGHT, and UTTER, JJ., concur.