519 P.2d 190

**Virgil David BURNS, Appellant,**

v.

**Beverly J. BURNS, Appellee.**

**No. 2 CA–CIV 1538.**

Court of Appeals of Arizona, Division 2.

March 7, 1974.

Rehearing Denied April 9, 1974.

Review Granted May 7, 1974.

---

**338**

Miller, Pitt & Feldman, P. C., by Barry N. Akin, Tucson, for appellant.

Lesher & Scruggs, P. C., by Robert O. Lesher, Tucson, for appellee.

## OPINION

HOWARD, Judge.

May a spouse sue the former spouse for negligence after the parties have been divorced? That is the issue in this case.

On May 27, 1972, appellant, while a passenger in an automobile driven by appellee, was seriously injured in an automobile accident cause by appellee's negligence. Although married at the time of the accident, apparently they were not happy as they had separated one month before and appellee had consulted an attorney about a divorce. The accident did not restore connubial bliss and on September 1, 1972, they were divorced. Appellee remarried three weeks after the divorce. Appellant filed suit against appellee on October 17, 1972 to recover damages for his injuries sustained prior to divorce.

This appeal is from a summary judgment in appellee's favor. It is appellant's contention that the doctrine of interspousal immunity should not apply after the parties have been divorced. Appellee counters by asserting that since we have adopted a no-fault divorce statute it requires no great imagination to foresee that spouses will secure a divorce in order to maintain a suit for damages.

The recent years have not been kind to traditional doctrines of immunity from tort actions. In Ray v. Tucson Medical Center, 72 Ariz. 22, 230 P.2d 220 (1951), the doctrine of charitable immunity was abrogated. Governmental immunity was abolished in Stone.v. Arizona Highway Commission, 93 Ariz. 384, 381 P.2d 107 (1963). Parental immunity in automobile negligence cases fell by the wayside in Streenz v. Streenz,. 106 Ariz. 86, 471 P.2d 282 (1970). Finally, in Windauer v. O'Connor, 107 Ariz. 267, 485 P.2d 1157 (1971), interspousal immunity was eroded when the court allowed a post-divorce suit for an intentional tort committed during coverture.

Our Supreme Court has, however, steadfastly refused to completely eliminate the doctrine of interspousal immunity. The

*first case* in Arizona on the subject was Schwartz v. Schwartz, 103 Ariz. 562, 447 P.2d 254 (1968) wherein the court stated: "Arizona has adhered to the common law position that interspousal tort suits are not permitted." 103 Ariz. at 563, 447 P.2d at 255. In Windauer v. O'Connor, supra, the court again reiterated this position. In so doing the court pointed out that the doctrine was an ancient common law doctrine founded on the theory of the legal unity of husband and wife. The court further stated that a complete abrogation of interspousal immunity was ". . . fraught with many problems". The only problem cited by the court was the community property laws of this state which make damages for personal injuries to a spouse community property.

Prosser, Law of Torts, 4th Ed. pp. 859–860 sets forth the reason for this common law doctrine:

"It has been said, whether humorously or not, that at common law husband and wife were one person, and that person was the husband . . . and the wife could be named as a party to a civil action, even though her husband must be joined with her, if he were alive when suit was brought. But as to her personal and property rights, the very legal existence of the wife was regarded as suspended for the duration of the marriage, and merged into that of the husband, so that she lost the capacity to contract for herself, or to sue or be sued without joining the husband as a plaintiff or defendant. The husband acquired the right to possession and use of his wife's real and personal property, and he was entitled to all of her choses in action, provided that he 'reduced them to possession' during marriage by some act by which he appropriated them to himself, such as collecting the money or obtaining judgment in a suit in his own name. In turn he became liable for the torts of his wife, committed either before or during the marriage.

* * * * * *

A combination of all these incidents made it impossible to maintain a tort action between husband and wife. If the man were the tort-feasor, the woman's right would be a chose in action which the husband would have the right to reduce to possession, and he must be joined as a plaintiff against himself and the proceeds recovered must be paid to him; and if the tort involved property, the wife had no right of possession to support the action. If the wife committed the tort, the husband would be liable to himself for it, and must be joined as a defendant in his own action. As a result, it was held that neither spouse could maintain an action against the other for either a personal or a property tort, whether it was committed before or during marriage; and the action was not maintainable even after divorce, which came late in the English law, after these rules were well established. . . ."

The world that spawned this doctrine no longer exists. The common law is not static and immutable. As stated by Chief Justice Vanderbilt in the New Jersey case of State v. Culver, 23 N.J. 495, 129 A.2d 715, 721 (1957):

". . . One of the great virtues of the common law is its dynamic nature that makes it adaptable to the requirements of society at the time of its application in court. There is not a rule of the common law in force today that has not evolved from some earlier rule of common law, gradually in some instances, more suddenly in others, leaving the common law of today when compared with the common law of centuries ago as different as day is from night. The nature of the common law requires that each time a rule of law is applied it be carefully scrutinized to make sure that the conditions and needs of the times have not so changed as to make further application of it the instrument of injustice. Dean Pound posed the problem admirably in his Interpretations of

Legal History (1922) when he stated 'Law must be stable, and yet it cannot stand still.'"

Our survey of the law in Arizona leads us to an inescapable conclusion that the concept of the unity of husband and wife which forms the basis of the common law doctrine does not exist in this state. A.R.S. § 25–214, Added Laws 1973, Ch. 172 § 64, gives each spouse the sole right to manage and control his or her separate property. It also drastically changed the right to control community property. The husband is no longer the sole manager of the community property. Now, both have equal management and control and disposition rights over the community property with certain very limited exceptions.[1] In Saxon v. Riddel, 16 Ariz.App. 325, 493 P. 2d 127 (1972) it was held that all common law disabilities attached to a married woman's disposition of her property have been abolished.

Other objections to the abolition of interspousal immunity such as disruption of domestic tranquility and fraud were met headon by the court in Streenz v. Streenz, supra, in the area of parental immunity were rejected. The reasoning in *Streenz* would be applicable here.

The more serious roadblock to the complete abolition of interspousal immunity is the problem of disposition of the proceeds of a judgment. The argument is that under our community property law the tort-feasor spouse would obtain half of the recovery and to that extent would profit from his or her own wrong. Our Court in Windauer v. O'Connor, supra, states that the reason California[2] abrogated the interspousal tort immunity rule was because the legislature had passed a statute making damages for personal injuries the separate property of the injured person. In Freehe

v. Freehe, 81 Wash.2d 183, 500 P.2d 771 (1972) the court rejects this position stating that the statute was cited as an alternative ground, it first being concluded that the common law disability ought to be abandoned as a *judicial* matter.

The Court in Windauer v. O'Connor, supra, suggests that the dissent in *Klein* makes sense and that the matter can be much better handled by legislative action on a "broad front" covering all affected areas of substantive law. The doctrine of interspousal immunity was made by the courts and can be undone by the courts. Such was the fate of governmental immunity. The problem of disposition of the proceeds was handled by the Washington court in *Freehe* in the finest tradition of the common law. The court states at p. 776 of 500 P.2d 776:

"In more direct response, this argument mistakenly assumes that courts are incapable of fashioning a remedy appropriate to a newly recognized enforceable claim for relief. For the simple reason that no enforceable claim has heretofore been recognized in this area, none of our prior cases allocating personal injury recoveries can be said to be on point. That is, we are not here concerned with the established rule that recovery for injuries to a married person by a third party tort-feasor is community property. Nor does any statute expressly deal with the allocation of damages as between the spouses in such an action. In these circumstances, it is for the court to fashion an appropriate remedy. We think that justice would best be served in these cases by a rule that compensates the injured spouse without unduly benefitting the tort-feasor spouse. See discussion 38 Wash.L.Rev. 374–379 (1963). We think that these dual considerations are best

---

1. A joinder of both spouses is required for the acquisition, disposition of encumbrance of an interest in real property other than an unpatented mining claim or a lease of one year. Both must also join in any transaction of guarantees, indemnity or suretyship. A.R.

S. § 25–214(C), Added Laws 1973, Ch. 172, § 64.

2. See Self v. Self, 58 Cal.2d 683, 26 Cal.Rptr. 97, 376 P.2d 65 (1962); Klein v. Klein, 58 Cal.2d 692, 26 Cal.Rptr. 102, 376 P.2d 70 (1962).

served by the following formula: (1) Special damages, including established future specials, are recoverable by the community. These are actual, out of pocket expenses which are a community liability. The fact that the tort-feasor spouse is thereby spared his or her community share of these expenses is, we think, outweighed by the facts that these damages are strictly compensatory in nature, inuring directly to the benefit of the injured spouse, and that any reduction in the damages recoverable would most directly and harmfully affect the injured spouse. (2) General damages for loss of future earnings which would have constituted community property are recoverable in the fraction of one half, by the injured spouse, as his or her separate property. (3) General damages compensating for pain and suffering, emotional distress, etc., are fully recoverable and are the separate property of the injured spouse."

 This Court is bound by the pronouncements in Schwartz v. Schwartz, supra, and Windauer v. O'Connor, supra. We therefore are not able to follow the example of Washington in Freehe v. Freehe, supra. We believe, however, that the facts of the case *sub judice*, are more akin to Windauer v. O'Connor, supra, and can be decided without violence to *Schwartz*.

*Windauer* recognized that there was a tort but there was a disability to sue for it while the spouses were married. The court stated, "Under our holding the action for intentional tort does not arise until the parties are divorced . . . ." Appellee claims that *Windauer* is distinguishable because the tort was intentional. We do not believe any distinction can be made between an intentional or negligent tort. The fact that the tort was intentional in *Windauer* was a make-weight but was not the touchstone of the decision. The real key to *Windauer* is that when the reasons for the disability to sue fail, the tort becomes actionable.

The appellee suggests that allowing such a suit would lead to phony divorces for the purpose of maintaining an action. If there is any basis for such an assertion then the necessity to completely abrogate interspousal immunity is more apparent. The same argument can be made in a *Windauer*-type situation. Common experience amply demonstrates that all intentional torts do not result in a divorce. The claim for relief, as in *Windauer*, does not arise until the parties are divorced.

The judgment is reversed.

HATHAWAY, C. J., and KRUCKER, J., concur.