[No. 1911-1.   Division One.   June 3, 1974.]

MARY SUSAN CHAMBERS *et al., Respondents,* v. THE CITY OF MOUNT VERNON, *Appellant.*

*Boynton Kamb,* for appellant.

*Paul N. Luvera, Jr.,* and *K. R. St. Clair,* for respondents.

SWANSON, C.J.—The City of Mount Vernon (City) and Allied Aggregates & Asphalt Paving, Inc. (Allied), codefendants below, entered into a lease, over the unanimous objection of the city park board, whereby Allied could conduct a rock quarrying operation on certain city park property. Plaintiffs Chambers and Day brought suit as taxpayers and residents of the city of Mount Vernon, claiming that the lease was void and illegal primarily because (1) the City did not comply with the State Environmental Policy Act of 1971 (SEPA), and (2) inasmuch as management of the park land in question had been previously delegated to the city park board, the city council had no authority to enter into the lease without the park board's approval. Plaintiffs Darvill, Poppe and Robbin, though not residents of the city, joined the lawsuit as residents of Skagit County living near the park property and added the allegation that the operation of the rock quarry as authorized by the lease

would constitute a public nuisance within the meaning of RCW 7.48.

The trial court found that the City had failed to comply with SEPA and had entered into the lease without the approval of the city park board to which the City had delegated the authority to control and supervise all city parks. In addition, the trial court found that

> the operation of the rock quarry pursuant to the terms of the lease is injurious to the health and offensive to the senses as well as an obstruction to the free use of neighboring property so as to essentially interfere with the comfortable enjoyment of life and property and further constitutes a trade or manufacturing process which occasions obnoxious exhalations and is otherwise offensive and dangerous to the health of individuals and the public in general and, therefore, constitutes a public nuisance.

Finding of fact No. 6, in part. The court also found that

> an unreasonable amount of dust from time to time falls on those property owners who live on Hickox Road. The operation of noisy machinery during the week and on weekends contrary to the terms of the lease have taken place. Blasting of rock periodically as well as unscheduled blasting and blasting on weekends without any particular pattern as far as timing is concerned have occurred. This has resulted in a loss of enjoyment of homes and yards as well as constituted an injurious environment to the seventy-one children living in the immediate area. A loss of sleep on weekends or other mornings due to loud machinery noises at 6:30 and 7:00 A.M. have occurred. The operation of a rock quarry three-eighth's ($\frac{3}{8}$'s) of a mile to one-half ($\frac{1}{2}$) a mile from these homes puts an unreasonable burden upon these property owners and in balancing the interest of all of the parties hereto, the operation of the rock quarry is unreasonable and should be abated and enjoined.

Finding of fact No. 7, in part.

The trial court concluded that the quarry operation under the lease should be permanently enjoined and abated on three grounds: (1) that it is a public nuisance; (2) that it was commenced without authority of the park board and therefore is illegal; and (3) the City failed to comply with

SEPA, specifically RCW 43.21C.030 (1) (c) requiring an environmental impact statement. The trial court's decree provides in part that the City and Allied are

permanently enjoined from this date forward from in any way or manner, directly or indirectly, . . . operating any quarry operation or carrying out the terms of the lease in any manner involved in this litigation.

Only the City appeals.

The City presents three basic contentions based upon its assignments of error to certain findings of fact, conclusions of law, and portions of the decree and permanent injunction entered by the trial court: First, the trial court erred in determining that the lease in question was void because it was not approved by the city park board. Second, the trial court erred in concluding that the City failed to comply with SEPA. Third, the trial court erred insofar as it held that the City was a party to the objectionable rock quarry operation and that the City should therefore be permanently enjoined from operating "any quarry operation" as distinguished from the one in question which was conducted by Allied and found by the trial court to be a public nuisance.

■ Our disposition of the first two contentions does not require extensive discussion. As to the first, it is apparent that the trial court was in error in concluding that the failure to secure the park board's approval rendered the City's lease invalid. The park board is merely a creature of the city council's legislative action and has "only such powers and authority . . . as are granted to it by the legislative body." RCW 35.23.170. The trial court's finding of fact No. 2 which states in part that the City "delegated to that park commission [board] the power to run parks and to control and supervise all parks," does not refer to any power of the park board to exercise final authority as to leases of park property negotiated by the city council. The park board was clearly subservient to the city council and it is undisputed that the council could abolish the board at

any time; therefore, the approval of the board was not necessary to the validity of the lease.

As to the second contention, relating to SEPA, the trial court failed to make any specific findings of fact to enable us to review whether the City complied with the procedural requirements of SEPA, including the requirement that the City determine if the proposed lease would have a substantial effect upon the environment. *See Juanita Bay Valley Community Ass'n v. Kirkland*, 9 Wn. App. 59, 510 P.2d 1140 (1973). We are therefore unable to review the propriety of the City's actions and, under other circumstances, a remand to the trial court for the entry of appropriate findings would be in order; however, we have concluded that the trial court's decision substantially may be affirmed on other grounds and thus further consideration of the City's compliance or noncompliance with SEPA is unnecessary.

In support of its third contention, relating to the trial court's decision to enjoin permanently "any quarry operation," the City argues that, with reference to the quarry operation here in question, it was nothing more than a landlord who made casual purchases of gravel but who in no way operated the "public nuisance" and therefore any injunction against the City should be limited to one prohibiting the City from selling rock under the lease with Allied here in controversy. The respondent property owners contend that the City may not shield itself from injunction by claiming it is a landlord because if it were allowed to do so it could enter into similar leases with other parties thereby requiring multiple litigation, and further, that the injunction entered was appropriate because the City was a direct participant profiting under the lease; however, as it is stated in Annot., 47 A.L.R.2d 490 (1956) at page 496:

> In most instances it has been held, expressly or by necessary implication from the relief granted that the nuisance involved was not the quarry itself, but rather

the explosions or particular manner of operation that occasioned the damages and annoyances. Or, as it often has been expressed, a quarry is not a nuisance per se, but it may become so under certain circumstances relating to surroundings and methods of operation, and the relation between those two factors. But whether it is to be considered that the nuisance was the quarry, the explosions, the manner of operation, or some phase of them, an important element of such cases is that the injunctive relief granted went only to such aspects of the quarry operations as were shown to have produced the obnoxious effects, but the quarry itself was not enjoined from operation. Defendants have been ordered to cease operating their quarries in such a way as to throw rocks and dust on the plaintiffs' premises, vibrate their houses, or create extraordinarily loud noises, and otherwise to abate whatever actionable annoyances may have been alleged and proved. [Footnote omitted.]

In the case at bar, the primary question litigated was the legality of the quarry operation conducted by Allied under the lease it had with the City. It was that particular conduct that the trial court properly found to constitute a nuisance, and there is no finding that the quarry per se constitutes a nuisance, nor is there a finding that any conceivable quarry operation on the City's property would amount to a nuisance. It is possible that a future quarrying operation might not constitute a nuisance, given sufficient efforts to control dust, noise, and the traffic of heavy equipment and trucks.

In any event, there is no showing that it is impossible or impracticable to eliminate the offensive features of the quarry operation here in question, which is otherwise a lawful business, and therefore it was improper for the trial court to enter a permanent injunction against "any quarry operation." *See Mathewson v. Primeau,* 64 Wn.2d 929, 395 P.2d 183 (1964); *Tinsley v. Monson & Sons Cattle Co.,* 2 Wn. App. 675, 472 P.2d 546 (1970).

Therefore, we hold that the trial court is affirmed insofar as it enjoined Allied and the City from conducting the quarry operation here in question in such a way as to

constitute a public nuisance. Accordingly, the cause is remanded to the trial court with the instruction that it modify the findings of fact, conclusions of law and the decree insofar as they operate to enjoin the City from engaging in "any quarry operation" or amount to a determination that the City's quarry is a nuisance per se.

Affirmed in part; reversed and remanded in part.

JAMES and WILLIAMS, JJ., concur.
Petition for rehearing denied July 31, 1974.