[Nos. 14662-2-II; 15076-0-II.    Division Two.    December 21, 1992.]

CHRISTINE F. PLANKEL, *Appellant*, v. GARY G. PLANKEL, *Respondent.*

*Stephen T. Carmick,* for appellant.

*Frederick D. Gentry* and *Bean, Gentry & Rathbone,* for respondent.

SEINFELD, J. — Christine Plankel appeals from a summary judgment dismissing with prejudice her tort claim against her former husband, Gary Plankel.[1] The trial court held that the dissolution of the Plankel marriage, along with the attendant division of property rights and liabilities, also terminated Christine's right to recover damages from her former spouse for tortious conduct that occurred during the marriage. We reverse.[2]

Christine and Gary Plankel were married on January 30, 1984. On December 23, 1986, Christine was injured in an automobile accident; she was a passenger in a car driven by Gary. This accident is the basis for Christine's negligence action against Gary. Her complaint alleges that she suffered serious personal injuries when Gary negligently drove the car across the center line and collided with another car.

The Plankels separated on April 25, 1987; Gary petitioned for dissolution on April 29, 1987. The trial court entered a decree of dissolution on February 18, 1988, based on an agreed distribution of assets and debts; the dissolution decree does not mention the car accident, injuries received in the accident, or distribution of the tort claim.

Christine filed her complaint on December 22, 1989, after entry of the decree of dissolution. Gary moved for summary judgment on December 6, 1990. On January 4, 1991, the trial court granted summary judgment to Gary, dismissing Christine's claim with prejudice.

■ On appeal from summary judgment, the appellate court performs de novo review, making the same inquiry as the trial court. *Simpson Tacoma Kraft Co. v. Department of Ecology*, 119 Wn.2d 640, 646, 835 P.2d 1030 (1992). We

---

[1]Since the parties share the same last name, we will refer to them by their first names, for convenience.

[2]After appealing the summary judgment, Christine petitioned to vacate the dissolution decree and reopen property distribution to distribute the tort claim. The court dismissed her petition with prejudice. She also appeals that decision. In light of our decision allowing the tort action, this second appeal is superfluous and is dismissed.

uphold the grant of summary judgment if we determine, based on the documentation provided to the trial court, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c).

In this case, the particular facts alleged in the complaint are not at issue. Rather, the trial court granted summary judgment on the theory that Gary was entitled to a judgment as a matter of law. The trial court, relying on a 1911 Supreme Court opinion, *Schultz v. Christopher*, 65 Wash. 496, 118 P. 629 (1911), held that "there is a presumption that all of rights [of the parties] were determined in the decree." In other words, the trial court determined that Christine would not be permitted to relitigate a tort claim that should have been considered as part of the dissolution proceedings.

In *Schultz*, Genevieve Schultz sued her former husband, Oscar Christopher, for willfully infecting her with a malignant venereal disease during their marriage. 65 Wash. at 497. She alleged that the transferred disease caused her mental anguish and physical pain and suffering and rendered her incapable of performing any physical labor. 65 Wash. at 497. Christopher demurred to this complaint and the trial court dismissed the action. 65 Wash. at 497.

The Supreme Court, on review of the dismissal of the complaint, stated "that the only question involved is whether a wife can sue a husband for a tort committed upon her person." The court then held that common law interspousal immunity barred the cause of action. *Schultz*, 65 Wash. at 497-500. This holding of *Schultz* was overruled by *Freehe v. Freehe*, 81 Wn.2d 183, 500 P.2d 771 (1972). *Freehe* rejected the common law and policy rationales supporting interspousal immunity, and allowed spouses to sue each other for torts committed during marriage. 81 Wn.2d at 192.

Although the *Schultz* court explained that interspousal immunity was the "only question involved", it nonetheless went on to discuss "another conclusive reason why this demurrer should have been sustained." 65 Wash. at 500.

Noting that a tort committed during marriage caused the injuries and that the parties had divorced after commission of the tort, the court held that all the rights of the parties were presumed to have been determined in the divorce proceeding. 65 Wash. at 500-01. Citing an 1891 case, the *Schultz* court explained that a divorce court making an "equitable division" investigates all the circumstances, including "the degree of blame to be attached to the respective parties" and the physical condition of the parties. *Schultz*, 65 Wash. at 501 (quoting *Webster v. Webster*, 2 Wash. 417, 26 P. 864 (1891)). *Schultz* concludes:

> the condition of the appellant, flowing from the alleged tort, was a matter to be taken into consideration, and the presumption is that it *was* taken into consideration by the court in the distribution of the property made in the decree of divorce. It would be against public policy to permit multifarious actions concerning the property rights of the husband and wife after divorce which were in existence during coverture.

65 Wash. at 501.

Initially, we observe that the second rationale of *Schultz* was not necessary to the decision and is thus nonbinding dicta. Since Mrs. Schultz did not have a cause of action for an interspousal tort, it is pointless to state that the nonexistent action is barred by an intervening divorce. Furthermore, it is arguable that *Freehe* also overruled this rationale, sub silentio. The *Schultz* rationale is based on the notion that the divorce action provided an adequate remedy for the wife's first claim. *Freehe*, expressly rejected this notion. 81 Wn.2d at 187-88, 192. The second *Schultz* rationale appears inconsistent with the underlying premise of *Freehe*. Nonetheless, we will address the *Schultz* dicta on its merits since (1) it was the basis for the trial court's grant of summary judgment, and (2) it is the only possible remaining rationale for the continued viability of *Schultz*.

Although the *Schultz* court does not use the term "res judicata", that doctrine appears to be the basis for its rationale that all of the rights of the parties presumably were determined in the divorce proceeding. Its concern that a

matter already considered by one court not be relitigated in another proceeding is the same concern that underlies the doctrine of res judicata. *Schoeman v. New York Life Ins. Co.*, 106 Wn.2d 855, 859, 726 P.2d 1 (1986). Res judicata protects the finality of judgments and operates when there is "concurrence of identity" between the current action and a former action in the following four respects: "(1) subject matter; (2) cause of action; (3) persons and parties; and (4) the quality of the persons for or against whom the claim is made." *U.S. Bank of Wash. v. Hursey*, 116 Wn.2d 522, 529, 806 P.2d 245 (1991).

In 1911, when *Schultz* was decided, it was necessary for the petitioner to prove fault in order to obtain a divorce. Rem. & Ball. Code § 982; Laws of 1891, ch. 26, § 1, p. 42. Today, we dissolve marriages rather than divorce couples, and proof of fault is neither required nor relevant. RCW 26.09.030, .080; *In re Marriage of Little*, 96 Wn.2d 183, 187-88, 192, 634 P.2d 498 (1981). Although the Plankel dissolution action and Christine's tort action share identity of parties, they involve dissimilar subject matters and causes of action. To prevail in her tort action, Christine would have to prove that Gary was at fault and that his fault was a proximate cause of her injuries. *Christensen v. Swedish Hosp.*, 59 Wn.2d 545, 548, 368 P.2d 897 (1962); *Jones v. Matson*, 4 Wn.2d 659, 671, 104 P.2d 591, 134 A.L.R. 708 (1940). In the dissolution context, the trial court considers neither fault nor proximate cause. Further, in a dissolution proceeding, the trial judge is required to distribute the property and liabilities as shall appear "just and equitable". RCW 26.09-.080. This involves totally different considerations than those required for adjudication of a tort action where awards must be based on proven damages rather than on equitable considerations. *See Puget Sound Power & Light Co. v. Strong*, 117 Wn.2d 400, 403, 816 P.2d 716 (1991). The subject matters and causes of action differ between the tort action and the dissolution action; thus, the tort action is not barred by res judicata.

By way of contrast, in the *Schultz* situation, the husband's responsibility for injuring his wife by transmitting a disease to her was a critical issue in the divorce proceedings as well as in the tort action. This degree of identity no longer exists under current no-fault dissolution laws.

Nonetheless, Gary argues that we should continue to follow the rule annunciated in *Schultz* 81 years ago, and points out the potential for undesirable consequences if we fail to do so. For example, he presents the scenario of "a pleasant divorce after an unpleasant marriage, but, lo! shortly thereafter followed the tort action which obviously had been part of the game plan." *Nash v. Overholser*, 114 Idaho 461, 466, 757 P.2d 1180, 1185 (1988) (Bistline, J., concurring only in judgment). Gary suggests that we prevent the injured ex-spouse from surprising the tortfeasor ex-spouse with a tort action by either (a) requiring filing of the interspousal tort claim prior to entry of the dissolution decree; or (b) consolidating the tort action with the dissolution action; or (c) making reference to the tort claim in the dissolution decree.

*Schultz* does not mandate any of the procedures suggested by Gary. Nor do the three reported cases that cite the second *Schultz* rationale require or support this result. *See Bullock v. Bullock*, 131 Wash. 339, 342-44, 230 P. 130 (1924); *Wagner v. Wagner*, 1 Wn. App. 328, 332, 461 P.2d 577 (1969); *Furgason v. Furgason*, 1 Wn. App. 859, 860-61, 465 P.2d 187 (1970).

Separate actions for an interspousal tort and for dissolution are not unusual. We are aware of at least two Washington cases that allowed separate actions, without discussing the issue. *Goode v. Martinis*, 58 Wn.2d 229, 361 P.2d 941 (1961) (allowed action for battery to proceed after the divorce decree); *Beam v. Beam*, 18 Wn. App. 444, 569 P.2d 719 (1977) (allowed separate actions), *review denied*, 90 Wn.2d 1001 (1978).

Further, Washington's Legislature has declared that "[e]very married person shall hereafter have the same right

and liberty . . . to sue and be sued, as if he or she were unmarried." RCW 26.16.150. *Freehe* construed this statute to allow interspousal tort actions, saying that "the statute means what it says." 81 Wn.2d at 190. If we were to bar an interspousal tort action because of an intervening dissolution decree, we simultaneously would restrict a person's right to sue based on marital status. This would frustrate the purpose of RCW 26.16.150.

In addition, we do not believe that Gary's suggestion for consolidation of the interspousal tort and dissolution actions is workable or desirable. Indeed, during oral argument, Gary's counsel conceded, "I admit that there are difficulties envisioning a tort action being tried within a dissolution action." We also have difficulty imagining such a procedure. We will not impose it.

Gary's other suggestions, that we require filing of the tort action prior to entry of the dissolution decree or reference to the unrealized tort claim in the decree, may or may not be desirable; certainly when a trial court looks to a spouse's injuries arising out of such a tort as a factor affecting an award of spousal maintenance or property or debt distribution, it should be advised of the potential for a future tort action.[3] Here, there is no indication that the substance of the distribution scheme in the Plankel dissolution decree was in any way influenced by any injuries Christine may have sustained in the car accident. In any event, if it is necessary to develop procedures to synchronize dissolution and interspousal tort actions, that is properly a legislative, rather than a judicial, function. *See Clark v. Payne*, 61 Wn. App. 189, 195, 810 P.2d 931, *review denied*, 117 Wn.2d 1022 (1991).

---

[3] We note that an award of damages for an interspousal tort is largely the separate property of the plaintiff spouse, to prevent enrichment of the tortfeasor. *Freehe*, 81 Wn.2d at 191-92. *See also In re Marriage of Brown*, 100 Wn.2d 729, 738, 675 P.2d 1207 (1984).

96

We conclude that because of changes in our divorce laws along with the abandonment of interspousal immunity, *Schultz v. Christopher, supra,* is no longer controlling authority.[4] It does not prevent Christine Plankel from pursuing her tort claim.

Accordingly, we reverse the summary judgment.

PETRICH, C.J., and ALEXANDER, J., concur.

[4]Our decision is supported by decisions of courts in Wisconsin, Idaho, Indiana, and to a lesser extent, Utah and Arizona. *Stuart v. Stuart,* 143 Wis. 2d 347, 352-53, 421 N.W.2d 505, 507-08 (1988); *Nash v. Overholser,* 114 Idaho 461, 462-63, 757 P.2d 1180, 1181-82 (1988); *State v. Guzman,* Idaho cause 17716 (Nov. 5, 1992) (concurrence rejected); *McNevin v. McNevin,* 447 N.E.2d 611, 615-18 (Ind. Ct. App. 1983); *Lord v. Shaw,* 665 P.2d 1288, 1291 (Utah 1983); *Windauer v. O'Connor,* 127 Ariz. 267, 268, 485 P.2d 1157, 1158 (1971).