[No. 35548-5-II.  Division Two.  January 18, 2008.]

*In the Matter of the Marriage of* SAMUEL ANGELO, *Appellant*, and MARILYN ANGELO, *Respondent*.

MARILYN ANGELO, *Respondent*, v. SAMUEL T. ANGELO ET AL., *Appellants*.

624

*Terrance J. Lee* (of *Law Office of Terry Lee*) and *Leah Eccles Watson* (of *Next Generation Divorce, PLLC*), for appellants.

*Curtis A. Welch* (of *Duggan Schlotfeldt & Welch Law Firm*); *Carolyn M. Drew* (of *Horenstein & Drew, PLLC*); and *Catherine Wright Smith* and *Valerie A. Villacin* (of *Edwards Sieh Smith & Goodfriend, PS*), for respondent.

¶1 VAN DEREN, J. — Samuel Angelo and Sam Angelo Construction, Inc. (SAC) appeal the trial court's consolidation of a tort claim with a marital dissolution action and its subsequent judgment awarding $36,095.00 in damages, $194,014.52 in attorney fees, and $8,650.05 in costs to

Samuel's former spouse, Marilyn,[1] based on her claims that Samuel fraudulently transferred real property that they owned during their marriage. Samuel and SAC contend that the trial court erred by (1) consolidating the dissolution action with a tort claim; (2) omitting findings of fact on the nine elements of fraud;[2] (3) denying Samuel and SAC's motion to dismiss because it erroneously determined that Marilyn was a creditor under the Uniform Fraudulent Transfer Act (UFTA), chapter 19.40 RCW; and (4) awarding attorney fees and costs to Marilyn.[3] Samuel and SAC argue that we should vacate the judgment and attorney fees to Marilyn and that they should be awarded attorney fees and costs on appeal. At oral argument, we learned that the trial court has not completed the consolidated property dissolution case and that no hearing or trial is scheduled to complete it. We, therefore, address only the tort claims and grant Samuel and SAC's requested relief. We vacate the trial court's findings of liability and its award of damages and attorney fees and costs against Samuel and SAC. And we remand for dismissal of Marilyn's tort claims and for further proceedings in the dissolution action, consistent with this opinion.

## FACTS

¶2 Samuel and Marilyn were married on March 1, 1989. Samuel, his father, and his brothers worked together in

---

[1] We refer to the parties by their first names to avoid confusion. We mean no disrespect.

[2] *See Beckendorf v. Beckendorf*, 76 Wn.2d 457, 462, 457 P.2d 603 (1969); *Pedersen v. Bibioff*, 64 Wn. App. 710, 723 n.10, 828 P.2d 1113 (1992).

[3] Samuel and SAC also assign error to various findings of fact and conclusions of law and the trial court's denial of their motion to reconsider, all within the context of their primary contentions and without a separate and supporting argument. We do not consider assignments of error unsupported by argument or authority. *Ang v. Martin*, 154 Wn.2d 477, 486-87, 114 P.3d 637 (2005); RAP 10.3(a)(6), (g) (appellate brief should contain argument supporting issues presented for review, citations to legal authority, and references to relevant parts of the record; we will review only a claimed error included in an assignment of error or clearly disclosed in an associated issue).

construction and speculated in real property. They bought parcels of real property with mortgages solely for investment purposes, including rental properties. They also built on various parcels and then either sold or rented the improved parcels for profit. The Angelo brothers operated a partnership, the Ted Angelo Brothers (TAB), and Samuel started his own partnership, SAC, naming Marilyn as an officer of the company. "SAC[,] prior to their marital difficulties[,] had a value in excess of a million dollars." Clerk's Papers (CP) at 3706.

¶3 Samuel and Marilyn separated on January 1, 2000, and Samuel filed a petition for dissolution on June 28, 2001. The parties filed an agreed dissolution decree on February 12, 2002, based on a separation contract reached after extensive discovery, including Samuel's deposition and production of documents related to the property owned and transferred during the marriage and after separation. The separation contract was incorporated into the decree and allocated postdissolution ownership and management of 24 parcels of real property, but by the time the settlement agreement was entered, SAC's total asset value was less than $100,000.

¶4 Two weeks after entry of the decree, Marilyn filed a motion to compel Samuel's compliance with the dissolution decree, declaring that he had engaged in unauthorized transfers of marital property and had otherwise failed to comply with the separation contract.[4] Marilyn declared under penalty of perjury that "Samuel had transferred

---

[4] Finding of fact 2.8 stated:

Each party hereby warrants to the other that he or she is not now possessed of any property of any kind . . . other than as set forth in . . . the Separation Contract . . . and that neither of them has made, without the knowledge and consent of the other, any gifts or transfers of community or separate property within the past three (3) years with a value in excess of $200.00. If it should hereafter be determined that the husband or the wife . . . has made, without the knowledge and consent of the other, any gifts or transfers of community property or separate property . . . each of the parties agrees to pay to the other, upon demand, an amount equal to one-half (½) of the fair market value of any such property.

CP at 44-45.

numerous pieces of real property . . . into the names of family members," CP at 75, and that "it was very clear . . . that [Samuel] had deliberately and systematically depleted the community of hundreds of thousands of dollars in real property and [she had] agreed to accept . . . what was left." CP at 78. She also asserted that Samuel had sold real property immediately before he agreed to award her that same real property in the dissolution decree.

¶5 On March 5, 2002, Marilyn moved for relief from judgment based on CR 60(b)(4) and (11)[5] and sought to modify the dissolution decree to provide for "benefit of the bargain" damages based on Samuel's unauthorized real property transfers to family members. CP at 98. Samuel moved to dismiss Marilyn's action, asserting that (1) the trial court lacked subject matter jurisdiction under CR 12(b)(1), and (2) because she had not shown fraud, Marilyn had failed state a claim under CR 12(b)(6). Marilyn asserted that Samuel's "misrepresentations and subsequent actions have made the property settlement portion of the Separation Contract unenforceable" and requested "that the Court vacate and amend the property portion of the Decree." CP at 158.

¶6 On March 26, the parties reached an out-of-court agreement that (1) Samuel would give Marilyn a deed of trust on certain properties; (2) the family members would release all claims to three previously transferred properties and hold Marilyn harmless; (3) Samuel would repair Marilyn's car and transfer title to her; and (4) Samuel's attorney would prepare the documents to implement their agreement. Marilyn accepted these terms against the advice of her counsel, but she later refused to sign the agreement and, on August 21, 2002, she renewed her earlier CR 60(b)(4) and (11) motion for relief from judgment and for attorney fees.

---

[5] CR 60(b)(4) allows a court to grant a motion for relief from judgment where fraud, misrepresentation, or other misconduct of an adverse party justifies such relief; and CR 60(b)(11) allows such relief for any other reason that justifies it.

¶7 This time, Marilyn asked the trial court to vacate the property portion of the dissolution decree, enjoin Samuel from "transferring or further encumbering any of the properties that are the subject of the Separation Contract," and to "award attorney fees for this action and to facilitate further discovery" because Samuel had reneged on the out-of-court agreement. CP at 172. Marilyn further declared that Samuel was in arrears on his spousal maintenance and insurance payments and asked that Samuel be held in contempt and ordered to honor his obligations under the terms of the separation contract. Finally, Marilyn told the trial court that she was in the process of filing an attached complaint for damages against Samuel and SAC, Lewis and Miki Angelo, Joseph Angelo, and Theodore Angelo under the UFTA "for their participation in the fraudulent transfer of properties." CP at 177.

¶8 On August 29, Marilyn moved to consolidate her motion for relief from judgment in the dissolution case with her tort claims, asserting common issues of law and fact.[6] Samuel renewed his motion to dismiss, added additional grounds under CR 12(b), responded that Marilyn's attempt to consolidate was frivolous under well-settled case law, and urged the trial court to deny her motion and award Samuel attorney fees. Samuel also advised the trial court that Marilyn's attorney drafted the separation contract and that Marilyn admitted she knew of the assets she now accused him of fraudulently transferring and it was her duty to value all the assets prior to the dissolution, particularly in light of the extensive discovery that preceded the dissolution.

¶9 On September 6, Samuel filed a third motion to dismiss Marilyn's motion to consolidate and for CR 11 sanctions against Marilyn for filing a frivolous motion to consolidate a dissolution action with a tort claim. Samuel also provided the trial court with additional information on

---

[6] Marilyn's complaint asserted a total of 12 claims, 10 under the UFTA, and 2 under a theory of tortious interference with a contractual relationship.

the disposition of the community property, restated his earlier arguments, and asserted equitable estoppel and laches as defenses to Marilyn's claims. At the hearing on the motions, the trial court's inquiry showed that Samuel had made significant misstatements to it and the court ordered him to provide further information on the properties and proof of payment of spousal support. On January 16 and, again, on January 22, 2003, Samuel provided the trial court with financial statements and information on various real properties.

¶10 On February 7, 2003, the trial court granted Marilyn's motion to consolidate the actions under CR 42(a),[7] "finding that there are common questions of law or fact between these two cases; consolidation will simplify discovery and improve efficiency; and because of the timing of the alleged transfers of property referenced in the fraudulent transfer Complaint as such transfers relate to the dissolution." CP at 693.

¶11 On April 18, the trial court vacated the property portion of the dissolution decree without any finding or explanation and reserved ruling on Marilyn's request for attorney fees. The trial court further ordered that "[a]ll other provisions of the Dissolution Decree entered February 12, 2002, and the Separation Contract incorporated therein" remain in full force and effect and that "[t]he determination of final property distribution to [Samuel and Marilyn] is reserved pending determination of" Marilyn's civil complaint. CP at 749. On June 3, the trial court ordered Samuel to pay Marilyn $7,500 in temporary attorney fees "to assist her in dealing with financial transactions that have occurred." CP at 756.

---

[7] CR 42(a) states:

When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

¶12 On May 11, 2004, Samuel and SAC filed yet another CR 12(b) motion to dismiss, this time asserting that, because the separation contract had been vacated, Marilyn did not have a claim and was, therefore, not a creditor under the UFTA. The trial court denied the motion, finding that Marilyn "at the time of the conveyance had an interest in, a tenancy in common, or a financial offset due to the fact that the property contained in the settlement agreement had been encumbered or transferred without" her authority. CP at 776.

¶13 Marilyn amended her complaint: (1) adding TAB as a defendant; (2) adding 17 additional claims involving 19 additional parcels of real property; (3) asking for relief under the UFTA and common law theories of fraud, fraudulent concealment, fraudulent inducement, fraudulent accounting, and "[t]ortious interference with Contract"; and (4) asking for a joint and several judgment against all defendants for damages. CP at 777. Samuel and SAC's answer denied the claims and asserted either that Marilyn had knowledge of each transfer or that the transfer had not been concealed. Although all other Angelo defendants asserted the statute of limitations as an affirmative defense, Samuel and SAC did not do so.

¶14 All defendants eventually moved for summary judgment. Samuel and SAC argued that summary judgment was appropriate because (1) Marilyn had knowledge of each transfer; (2) the particular transfer had not been concealed; (3) Samuel did not intend to defraud Marilyn; and (4) frequently, there was a loss or little gain on the transfers of real property and, therefore, no damages. In response, Marilyn, relying on finding of fact 2.8 in the dissolution decree[8] to support her claims, asserted that she did not have knowledge of either the transfers at issue or the actual value of those transferred assets. The trial court granted summary judgment only to the nonfamily defendants, Gordon Foster Jr. and Sherryl Foster.

---

[8] *See* note 4.

¶15 On January 13, 2005, over 120 days after the notice to set trial, Samuel and SAC filed a motion entitled "Motion and Declaration Re Procedure for Trial," suggesting that the trial court should bifurcate the fraud and dissolution actions for trial. CP at 2147. Marilyn argued that bifurcation was unnecessary as the defendants had expressly waived any right to a jury trial under CR 38(d)[9] and Clark County Superior Court Local Rule (LR) 38.[10] The Angelo defendants, except for Samuel and SAC, then unsuccessfully moved to extend the time to request a jury trial under LR 38.

¶16 A 13-day nonjury trial occurred over nine months, beginning May 9, 2005, and ending with closing arguments on February 13, 2006. All parties submitted written closing briefs. On May 10, 2006, one year and one day after the trial began, the trial court filed its decision awarding Marilyn: (1) $396,786 against Samuel and SAC; (2) $361,337 against TAB, to be joint and several with Samuel and SAC; and (3) $25,750 against Theodore Angelo, to be joint and several with Samuel and SAC. All defendants moved for reconsideration, which the trial court denied.

¶17 Although the trial court's findings of fact and conclusions of law addressed the tort claims individually, it did not provide a comprehensive or detailed explanation of the monetary damage awards based on the property parcels or related to the individual defendants. All parties sought clarification and amendment of the awards.

---

[9] CR 38(d) states:

**Waiver of Jury.** The failure of a party to serve a demand as required by this rule, to file it as required by this rule, and to pay the jury fee required by law in accordance with this rule, constitutes a waiver by him [or her] of trial by jury. A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties.

[10] Clark County LR 38(b)(1) states, *"Non-arbitration cases.* Except for cases submitted for arbitration, failure to demand a jury (and pay the required fee) within 30 days of the filing of the Notice to Set for Trial or the Response will be deemed a wavier of the right to a jury trial. The time period may be extended by court order."

¶18 Marilyn, in seeking clarification, stated that

> [t]his court set aside the property settlement portion of the . . . dissolution decree so that community property fraudulently transferred by [Samuel] . . . could be recovered, brought back into the community, and then distributed in accordance with this [c]ourt's ruling on property distribution.
>
> However, there is no reference in this [c]ourt's [o]pinion to setting aside the transfers of the five (5) properties that remain in the possession of the transferee defendants. The [c]ourt found that all five such properties had been fraudulently transferred. Those properties are [claims 3, 4, 11, 13, and 14].

CP at 3381.

¶19 Marilyn also asked the trial court to award her attorney fees and costs. The Angelo defendants, except for Samuel and SAC, moved to reopen the case to permit additional evidence of the mortgage balances on three parcels of property at the time of transfer. The trial court denied the motions to reopen and denied the motions for reconsideration, stating that "[n]o accounting for any of the proceeds through [SAC] established the trail of fraud that the [c]ourt relied upon." CP at 3694. But the trial court reduced the judgment against TAB to $334,941. The trial court also granted Marilyn's motion for attorney fees and costs "pursuant to the property settlement agreement . . . under RCW 4.84.330; and pursuant to RCW 26.09.080 and 26.09.140 and *Seals v. Seals*, 22 W[n.] App. 652, 656-58, 590 P.2d 1301 (1979)," ruled that the attorney fees were assessed only against Samuel and SAC. CP at 3715. The trial court did not clarify its damage award, or enter any order or decree dividing the marital property, or make any provision for several properties allocated in the vacated property portion of the separation contract.

¶20 Samuel and SAC filed a timely notice of appeal. On February 9, 2007, the trial court ruled that all defendants, except Samuel and SAC, had "satisfied their portions of the judgment" and amended its earlier judgment to $36,095.00

in damages and $194,014.52 in attorney fees against Samuel and SAC.[11] CP at 4857.

## ANALYSIS

### I. APPEALABILITY OF TORT JUDGMENT ABSENT CR 54(b) CERTIFICATION

¶21 Although neither party raised the issue of whether this case was ripe for appeal, we asked at oral argument about the property distribution portion of this consolidated case, particularly in light of the trial court's express reservation of the final distribution pending the outcome of the tort case, the unresolved status of the parties as tenants-in-common,[12] and the lack of detailed findings necessary for a proper review. The parties agreed that since October 2006, when the trial court entered judgment on the tort case, they have taken no steps to finalize the dissolution property division and that no trial or hearing was scheduled in that portion of the case consolidated under CR 42(a). They also agreed that, had the case proceeded to conclusion through the property division, neither party may have appealed.

██ ¶22 In reviewing the consolidated case on appeal, it is useful to turn to federal cases that have addressed the federal rules and consolidation on appeal.[13] We also look to the scant Washington authority. *Johnson v. Manhattan Ry.*

---

[11] Marilyn asserts that Samuel and SAC, by failing to amend the notice of appeal after entry of the amended judgment, have waived the right to appeal. In reply, Samuel and SAC argue that "[t]he amended judgment merely reduced the total judgment" and did not affect the substance of the issues and, therefore, under RAP 1.2, this court should "overlook the fact that the Notice of Appeal was not later amended." Reply Br. of Appellant at 2. We agree with Samuel and SAC and do not further address this issue.

[12] Although the trial court clearly intended to first try the tort claims and then resolve the dissolution property division that it vacated, we learned at oral argument that the trial court has yet to address the property division. Thus, the parties remain joint owners or tenants-in-common in all extant marital property. *See Seals*, 22 Wn. App. at 655.

[13] Because CR 42 and CR 54 closely parallel the federal rules, "analysis of the federal rule[s] may be looked to for guidance." *Beal v. City of Seattle*, 134 Wn.2d 769, 777, 954 P.2d 237 (1998).

*Co.*, 289 U.S. 479, 496-97, 53 S. Ct. 721, 77 L. Ed. 1331 (1933) and its progeny discuss consolidation. *See* 15A KARL B. TEGLAND & DOUGLAS J. ENDE, WASHINGTON PRACTICE: WASHINGTON HANDBOOK ON CIVIL PROCEDURE § 37.4, at 335 (2007-2008 ed.).

In the context of legal procedure, "consolidation" is used in three different senses:

(1) When all except one of several actions are stayed until one is tried, in which case the judgment in the one trial is conclusive as to the others. This is not actually a consolidation but sometimes is referred to as such.

(2) When several actions are combined into one, lose their separate identity, and become a single action in which a single judgment is rendered. An illustration of this is the situation in which several actions are pending between the same parties stating claims that might have been set out originally as separate counts in one complaint.

(3) When several actions are ordered to be tried together but each retains its separate character and requires the entry of a separate judgment. This type of consolidation does not merge the suits into a single action, or cause the parties to one action to be parties to another.

9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2382, at 8-9 (3d ed. 2008) (footnotes omitted).

¶23 Here, the trial court's intentions are unclear. The trial court indicated in the order granting consolidation that "[t]he determination of final property distribution to [Samuel and Marilyn] is reserved pending determination of" Marilyn's tort action, but no separate judgment has been entered and, according to the parties, no further action is pending. CP at 751. And the judgment that has been entered in this case leaves unresolved the vacated property portion of the decree and separation contract.

■ ¶24 CR 54(b) governs entry of judgments on multiple claims and provides that "the court may direct entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination in the

judgment, supported by written findings, that there is no just reason for delay and upon an express direction for the entry of judgment."[14] Here, there is no such certification by the trial court.

¶25 Division One of this court recently held that, to enforce a judgment on a consolidated claim, a CR 54(b) certification was required. *See Fluor Enters, Inc. v. Walter Constr., Ltd.*, 141 Wn. App. 761, 768-71, 172 P.3d 368 (2007). But neither *Fluor Enterprises* nor any Washington Supreme Court case specifically addresses the issue of whether the CR 54(b) certification requirements necessarily apply to a case consolidated under CR 42. And the federal circuits are divided about whether a Fed. R. Civ. P. 54(b) certification is always required, is never required, or is dependent on the circumstances of the Fed. R. Civ. P. 42 consolidation. *See* 10 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2656, at 47 (3d ed. 1998).

¶26 The Ninth Circuit has held that an appeal is permitted "only when there is a final judgment that resolves all of the consolidated actions unless a 54(b) certification is entered." *Huene v. United States*, 743 F.2d 703, 705 (9th Cir. 1984). The circuits that rely on a facts-and-circumstances test have found that a CR 54(b) certification is required only when a CR 42 consolidation "is clearly unlimited and the

---

[14] CR 54(b) provides:

**Judgment Upon Multiple Claims or Involving Multiple Parties.** When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination in the judgment, supported by written findings, that there is no just reason for delay and upon an express direction for the entry of judgment. The findings may be made at the time of entry of judgment or thereafter on the court's own motion or on motion of any party. In the absence of such findings, determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

actions could originally have been brought as a single suit."
*Ringwald v. Harris*, 675 F.2d 768, 771 (5th Cir. 1982).

¶27 Here, the trial court issued what appears to be a
final judgment, but that judgment did not resolve the
dissolution action. And the trial court clearly did not intend
unlimited consolidation, nor could these actions have been
originally brought in the same suit. Furthermore, under the
facts and circumstances of this case, remanding for a CR
54(b) certification would serve no purpose and no party has
disputed the appealability of the tort action.[15] Therefore,
we hold that no CR 54(b) certification was required to
support the instant appeal.

## II. Consolidation of Tort and Dissolution Action

¶28 Samuel and SAC contend that the trial court "ex-
ceeded it[s] jurisdiction under RCW 26.09.050(1) [when] it
consolidated the dissolution action with tort claims involv-
ing different standards of proof, a right to a jury trial, and
multiple parties who would not have standing in the dis-
solution action." Br. of Appellant at 4.

■■ ¶29 "CR 42(a) allows a court to consolidate actions
which involve a common question of law or fact. Consolida-
tion is within the discretion of the trial court and will be
reversed only upon a showing of abuse and that the moving
party was prejudiced." *Leader Nat'l Ins. Co. v. Torres*, 51
Wn. App. 136, 142, 751 P.2d 1252 (1988), *aff'd*, 113 Wn.2d
366, 779 P.2d 722 (1989). A discretionary decision or order
of the trial court "will not be disturbed on review except
on a clear showing of abuse of discretion, that is, discre-
tion manifestly unreasonable, or exercised on untenable
grounds, or for untenable reasons." *State ex rel. Carroll v.
Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

¶30 Samuel and SAC rely on *In re Marriage of Kaseburg*,
126 Wn. App. 546, 108 P.3d 1278 (2005) to assert that a tort

---

[15] We note that Marilyn's appellate attorney also represented the respondent in
*Fluor Enterprises*, who successfully asserted the CR 54(b) certification defense to
the appeal in that case.

action cannot be joined with an equitable action because "the trial court did not have any power that could not be inferred from the divorce [statute]." Br. of Appellant at 26. They acknowledge that *Kaseburg* was decided almost two years after the instant consolidation, but they point to the earlier cases cited by the *Kaseburg* court. *See* 126 Wn. App. at 557 n.7 (citing *In re Marriage of J.T.*, 77 Wn. App. 361, 362-63, 891 P.2d 729 (1995); *Plankel v. Plankel*, 68 Wn. App. 89, 95, 841 P.2d 1309 (1992)). Marilyn responds that the only parties aggrieved by the consolidation have not appealed and that, under *In re Marriage of Langham*, 153 Wn.2d 553, 559, 106 P.3d 212 (2005), it was not error to consolidate the cases.

■ ■ ¶31 Neither *Kaseburg* nor the underlying cases Samuel and SAC point to support the contention that a tort claim and a dissolution claim can never be consolidated under CR 42(a). In *J.T.*, we cited *Plankel* in holding that "[a] party is *not required* under Washington law to combine his or her tort action with the dissolution action." *J.T.*, 77 Wn. App. at 363 (emphasis added). This holding did not preclude consolidation under appropriate circumstances. Moreover, none of the cited cases involve a CR 42(a) consolidation of actions. *Kaseburg* dealt with the actual dissolution proceeding and, in both *J.T.* and *Plankel*, the spouse seeking postdissolution relief filed one action with multiple claims.

¶32 *Langham* involved a postdissolution motion to enforce a property distribution after the former husband unlawfully exercised stock options that had been awarded to his former spouse in the dissolution. On direct appeal, Division One affirmed the trial court's judgment in favor of the former wife based on a conversion theory. *Langham*, 153 Wn.2d at 556-59. At the Washington Supreme Court, the former husband argued that "he was deprived of the usual protections afforded a tort defendant because the case arose as an enforcement of a dissolution decree." *Langham*, 153 Wn.2d at 559. The court found no merit in this argument, stating:

> The superior court unquestionably has authority to enforce property settlements. RCW 26.12.010. It further has the authority to use "any suitable process or mode of proceeding" to settle disputes over which it has jurisdiction, provided no specific procedure is set forth by statute and the chosen procedure best conforms to the spirit of the law. RCW 2.28.150. Indeed, " '[w]hen the equitable jurisdiction of the court is invoked . . . whatever relief the facts warrant will be granted.' " *Ronken v. Bd. of County Comm'rs*, 89 Wn.2d 304, 313, 572 P.2d 1 (1977) (alteration in original) (quoting *Kreger v. Hall*, 70 Wn.2d 1002, 1008, 425 P.2d 638 (1967)).
>
> The trial court had jurisdiction over the subject matter and the parties via the equitable action to enforce the decree.

*Langham*, 153 Wn.2d at 560. *Langham* also did not involve an actual consolidation of separate actions. In fact, no Washington case appears to be exactly on point, making this issue one of first impression.

¶33 The trial court found that "there are common questions of law or fact between these two cases; consolidation will simplify discovery and improve efficiency; and because of the timing of the alleged transfers of property referenced in the fraudulent transfer Complaint as such transfers relate to the dissolution." CP at 693. "CR 42(a) confers substantial discretion on trial courts with respect to consolidation of common questions of law or fact." *W.R. Grace & Co. v. Dep't of Revenue*, 137 Wn.2d 580, 590, 973 P.2d 1011 (1999). It is undisputed that the two cases here involved common questions of law and fact. Although the trial court did not articulate the common issues, they appear to include (1) whether property was transferred without Marilyn's knowledge and consent, (2) the value of any such transferred property, and (3) Marilyn's legal share of any net equity.

¶34 Furthermore, the consolidation did not preclude a jury trial on Marilyn's tort claims. The record shows that Samuel and SAC did not request a jury trial and that the parties who requested one waited until after the deadline had passed and did not appeal the trial court's refusal to

seat a jury.[16] Finally, the trial court also ruled that "[t]he determination of final property distribution to [Samuel and Marilyn] is reserved pending determination of" Marilyn's civil complaint, indicating separate judgments would be entered on the tort and dissolution claims. CP at 749.

¶35 Although hindsight may reveal that a better course of action would have been either to stay the dissolution proceeding while Marilyn's tort claims were tried as a separate action or to address Marilyn's issues within the dissolution action first, we cannot say that the trial court abused its discretion in consolidating these claims based on the record before us. We conclude that the trial court's decision was within the scope of discretion our Supreme Court articulated in *Langham* because the trial court's equity powers were invoked to resolve the dissolution matter. And the trial court had jurisdiction over all of the parties, and since no specific procedure is set forth by statute to resolve such entangled issues, the chosen procedure best conforms to the spirit of the law. *See Langham*, 153 Wn.2d at 560.

III.  FIDUCIARY DUTY AND FRAUD CLAIMS

¶36 Samuel and SAC contend, and it is undisputed, that "[t]he trial court failed to even discuss the nine elements of fraud in its Memorandum of Decision or Findings of Fact and Conclusions of Law." Br. of Appellant at 29-30. Marilyn argues that the ordinary rules of fraud do not apply to spouses and that we should adopt a new rule of law for marital tort claims.

¶37 Marilyn, relying on *Seals*, asserts here, as she did at trial, that Samuel had an affirmative duty to disclose; therefore, no finding of the nine fraud elements was necessary for her to succeed under her common law tort claims. In reply, Samuel and SAC note that over half of Marilyn's claims alleged common law fraud and specifically, "[o]f the

---

[16] We, therefore, *do not address whether consolidation is appropriate if a party* properly requests a jury trial to which they are entitled.

claims granted by the trial court, claims 15, 18, 19, 21, 22, 25, and 29 alleged common law fraud." Reply Br. of Appellant at 9. They further assert that the cases Marilyn relies on do not support her arguments and that "[f]raud was not proven on any of the seven granted claims for relief alleging common law fraud," Reply Br. of Appellant at 11; therefore, this court should "reverse all awards and attorney fees related" to the common law fraud claims. Reply Br. of Appellant at 12.

¶38 We review questions of law and conclusions of law de novo. *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003). Clear, cogent, and convincing evidence is required to support the trial court's finding of fraud. *Williams v. Joslin*, 65 Wn.2d 696, 697, 399 P.2d 308 (1965). The nine elements of fraud are (1) representation of an existing fact, (2) materiality of the fact, (3) falsity of the fact, (4) the speaker's knowledge of the falsity of the fact, (5) the speaker's intent that the fact should be acted on by the person to whom the fact was represented, (6) ignorance of the fact's falsity on the part of the person to whom it is represented, (7) reliance on the truth of the factual representation, (8) the right of the person to rely on the factual representation, and (9) the person's consequent damage from the false factual representation. *Sigman v. Stevens-Norton, Inc.*, 70 Wn.2d 915, 920, 425 P.2d 891 (1967); *see also Alejandre v. Bull*, 159 Wn.2d 674, 690, 153 P.3d 864 (2007).

¶39 In *Seals*, the former wife filed a partition action after dissolution, alleging that her former husband had failed to disclose certain property in the dissolution action. 22 Wn. App. at 654. Division Three of this court held that the former husband had "a duty to disclose all community assets as well as separate property prior to dissolution." *Seals*, 22 Wn. App. at 656. Division Three also stated that "[p]arties prior to and during marriage have a fiduciary duty to one another in agreements which have been reached between them. A fiduciary duty does not cease upon contemplation of the dissolution of a marriage." *Seals*, 22 Wn. App. at 655 (citations omitted).

■ ¶40 Although *Seals* supports Marilyn's assertion that Samuel had a fiduciary duty to her to disclose the existence of community property in the dissolution action, this appeal involves only Marilyn's tort claims and not the consolidated dissolution action.[17] Thus, *Seals* is inapposite and we decline Marilyn's invitation to extend this state's tort law. Here, the dissolution action is the appropriate forum to resolve whether Samuel violated his fiduciary duties of marital disclosure.[18]

¶41 Marilyn asserts that Samuel's warranty in the dissolution decree[19] independently supports the trial court's award of damages and urges us to affirm the trial court's decision on this alternate basis. But (1) Marilyn has declared under penalty of perjury and during sworn testimony that she knew of the property transfers and agreed to divide only the remaining property in the dissolution decree; (2) the trial court vacated the property settlement

---

[17] Marilyn also relies on *Pedersen* to assert that, once she alleged sufficient facts suggesting that Samuel had breached his fiduciary duty, fraud was presumed and the burden shifted to Samuel to prove that there was no fraud. But *Pedersen* involved a confidential relationship between a father and son; therefore, the holding of that case does not implicate a husband's duty to disclose community assets and separate property as discussed in *Seals*. *See Pedersen*, 64 Wn. App. at 712, 720. No case Marilyn cites for authority supports the presumption of fraud that she suggests.

[18] The trial court found that "disclosures are meaningless if the transactions have already taken place. The fact of the disclosure merely points out the details of the efforts to place the properties outside the reach of the pending divorce settlement." Although the context of this finding is not exactly clear, the trial court's statement that after-the-fact "disclosures are meaningless" is troubling in view of the elements of a UFTA or common law fraud claim and the evidence of Marilyn's pretrial declaration and sworn trial testimony acknowledging Samuel's disclosure and her knowledge of the transfers. CP at 3705.

Moreover, the decree provided that "any gifts or transfers of community or separate property within the past three (3) years" "without the consent or knowledge of the other," CP at 44, would obligate the transferring or gifting party "to pay to the other, upon demand, an amount equal to one-half (½) of the fair market value of any such property." CP at 45. Thus, it is clear that after-the-fact disclosures, so long as disclosure was made before execution of the separation contract or entry of a dissolution decree, were intended to be taken into account in resolving the pending dissolution action. And the record makes it clear that Marilyn knew of many of Samuel's transfers of property, including transfers to his family, and that she agreed to divide only the remaining property identified in the separation contract.

[19] *See* note 4.

agreement at Marilyn's request; and (3) to date, no judgment has been entered reflecting a final distribution of marital property. And, as previously stated, we decline to reach issues more properly addressed in the consolidated, and still pending, dissolution action.

¶42 As it is undisputed that the trial court's findings and conclusions do not discuss the nine elements of fraud, we vacate and reverse all liability and damages derived from the common law tort claims against Samuel and SAC, including attorney fees.

IV.   CLAIMS UNDER THE UNIFORM FRAUDULENT TRANSFER ACT

¶43 Samuel and SAC also contend that the trial court erred when it denied his CR 12(b)(6) motion to dismiss because Marilyn could not assert a claim under the UFTA and she, therefore, was not a creditor. A trial court should grant a motion to dismiss under CR 12(b)(6) "only if it appears beyond a reasonable doubt that no facts exist that would justify recovery." *Cutler v. Phillips Petroleum Co.*, 124 Wn.2d 749, 755, 881 P.2d 216 (1994). We review CR 12(b)(6) rulings de novo. *Cutler*, 124 Wn.2d at 755.

¶44 Samuel and SAC's position before the trial court and on appeal is that, under the UFTA, a creditor is defined as a person with a right to a payment (a claim). They acknowledge that "Marilyn had a clear claim against [Samuel] under the property settlement provisions of their dissolution settlement contract"; however, "[w]hen the court vacated those provisions in its order, . . . Marilyn's claim was also vacated." Br. of Appellant at 34. Marilyn responds that, under community property law, she had "both a legal and equitable right to payment when the husband unilaterally transferred community property." Br. of Resp't at 21.

¶45 On appeal, Marilyn responds that the "UFTA claims relate solely to the transfers made to the husband's family members" and, "[s]ince those judgments have now been satisfied . . . by the amended judgment," Samuel and SAC's contention that the UFTA did not apply is now moot. Br. of Resp't at 20. We accept Marilyn's contention of

mootness and her waiver of any continuing claim against Samuel and SAC under her asserted UFTA claims and, therefore, do not address whether a spouse in a dissolution action may also be a claimant under the UFTA.

V.  DISTRIBUTION OF ASSETS DISPOSED OF PRIOR TO ORIGINAL DISSOLUTION DECREE

¶46 Samuel and SAC cite *In re Marriage of Wallace*, 111 Wn. App. 697, 45 P.3d 1131 (2002) and *In re Marriage of White*, 105 Wn. App. 545, 20 P.3d 481 (2001) in support of the proposition that if a party "disposed of an asset before trial, the court simply has no ability to distribute that asset at trial." *White*, 105 Wn. App. at 549. *See also Wallace*, 111 Wn. App. at 709-10 (court lacked authority to set aside a previous conveyance). But the trial court, using its equitable powers, may allocate the remaining separate and community property or enter judgment against one spouse in a dissolution decree to account for wrongful transfers by one spouse.[20] *See* RCW 26.09.080. Here, the trial court has yet to distribute any assets in the dissolution action. The trial court only awarded tort damages which we vacate, with the exception of the satisfied UFTA claims.[21] The allocation of the property awaits further court action in light of the evidence now before it.[22]

---

[20] If the trial court had first retried the property division, it may have found that Samuel wrongfully transferred property during or after entry of the dissolution decree. *See* RCW 26.09.080, .140; *see also Seals*, 22 Wn. App. at 656 (awarding wife damages based on the value of certain community property that had not been disclosed by husband during dissolution proceedings). But Marilyn has failed to prove common law fraud, waived any UFTA claims against Samuel and SAC, and has sworn under oath that she knew of many of the transfers of property before the dissolution was final. That evidence must now be considered by the trial court in the dissolution matter.

[21] We note that, had the trial court entered its final property division in this case, neither party may have appealed.

[22] Samuel and SAC also state that, "[b]y the time that Marilyn filed her tort action, properties described in 9 of the claims were beyond the three year statute of limitation for fraud." Br. of Appellant at 28-29 (citations omitted). But they did not assert the statute of limitations as an affirmative defense or otherwise argue that matter, and, other than a passing reference in closing argument, never mentioned this issue. Samuel and SAC also fail to support this argument on

## VI.   ATTORNEY FEES AND COSTS

■ ¶47  Samuel and SAC appeal the award of attorney fees to Marilyn under RCW 4.84.330 and chapter 26.09 RCW. Because the trial court did not enter final judgment or address the property division in the dissolution action in this matter, we agree with Samuel and SAC that an award of fees was erroneous. We, thus, vacate the fees and costs to Marilyn, leaving it for further decision and argument when the trial court determines the final property division.

¶48  Both parties seek attorney fees on appeal under RCW 26.09.140, and both rely primarily on various provisions of chapter 26.09 RCW for support. But, as we noted, this appeal relates specifically to the tort claims and provisions relating to fees and costs in dissolution matters do not apply.

¶49  Marilyn also asserts that the contractual nature of the property settlement agreement, including the attorney fee provision, supports the award of attorney fees under RCW 4.84.330.[23] Again, the instant appeal relates only to

---

appeal. *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (appellate courts do not consider assignments of error unsupported by argument).

Although Samuel and SAC correctly state that the statute of limitations on Marilyn's common law fraud claims is three years, a fraudulent transfer claim under the UFTA must be commenced within four years or, if later, within one year of the discovery of the fraudulent nature of the transfer. RCW 19.40.091; *see Freitag v. McGhie*, 133 Wn.2d 816, 820-21, 947 P.2d 1186 (1997). But for either common law fraud or a UFTA fraud claim, "the statute of limitations does not begin to run until all the elements of the cause of action for fraud are discovered or should have been discovered." *Freitag*, 133 Wn.2d at 823 (citing *Strong v. Clark*, 56 Wn.2d 230, 232, 352 P.2d 183 (1960)). And Marilyn asserts that the discovery of the fraudulent nature of the transfers at issue here occurred subsequent to the February 12, 2002, dissolution decree, well within one year of filing her tort claim. And the record shows that the trial court denied claims where final disposition occurred prior to 2000. Thus, Samuel and SAC's reference to the statute of limitations is without merit.

[23] RCW 4.84.330 states in pertinent part that

[i]n any action on a contract . . . where such contract . . . specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract . . . , shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract . . . , shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements.

the tort claims. Although the attorney fees provision of the property settlement agreement may arguably remain in effect in the dissolution action, we decline to award either party attorney fees on appeal and leave it to the trial court to decide whether either party is entitled to fees and costs under RCW 4.84.330 in the dissolution action.

¶50 Samuel and SAC also rely on RAP 14.2, which states that a "commissioner or clerk of the appellate court will award costs to the party that substantially prevails on review, unless the appellate court directs otherwise in its decision terminating review. If there is no substantially prevailing party on review, the commissioner or clerk will not award costs to any party." Here, Samuel and SAC substantially prevail and we award them costs, subject to compliance with Title 14 RAP.

¶51 We hold that the trial court's award of damages based on Marilyn's common law fraud claims, absent clear and cogent evidence of or findings on the nine elements of fraud, is unsupported, and we vacate and reverse all liability and damages determinations against Samuel and SAC based on common law fraud. We also vacate the award of attorney fees and costs to Marilyn. And, given that the third parties have satisfied the judgments against them under Marilyn's UFTA claims and she has waived any claim against Samuel and SAC based on her UFTA claims, we remand to the trial court to dismiss the tort action under cause number 02-2-03635-3 and to enter judgment in the dissolution action, cause number 01-3-01055-4, following proceedings in that case.[24]

HOUGHTON, C.J., and ARMSTRONG, J., concur.

Review denied at 164 Wn.2d 1017 (2008).

---

[24] We note that we have received a new appeal in cause number 01-3-01055-4 based on a finding of contempt against Samuel for failing to make payments on property initially awarded to Marilyn in the vacated property division. Without reaching judgment on the merits of the new appeal, the trial court may wish to reexamine its order in light of this opinion.